LEXTON–ANCIRA REAL ESTATE FUND, 1972, a California limited partnership; Lexton–Ancira Incorporated, a Kansas corporation; Merchandise Mart Associates, Ltd., a Colorado limited partnership, Petitioners,

v.

Murray HELLER, Personal Representative of the Estate of Jo Hixson (by substitution for Jo Hixson, successor-in-interest to Hixson Trade Shows, Ltd., formerly known as Trade Shows, Ltd., a California corporation), Respondents.

No. 90SC588.

Supreme Court of Colorado,
En Banc.

March 10, 1992.

Baker & Hostetler, Bruce D. Pringle, Todd L. Lundy, Joan Burleson, Vinton, Waller, Slivka & Panasci, William C. Waller, Kevin D. Allen, Denver, for petitioners.

Holland & Hart, John S. Castellano, Timothy M. Rastello, Marcy G. Glenn, Denver, for respondents.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to consider the court of appeals' opinion in *Heller v. Lexton–Ancira Real Estate Fund, 1972*, 809 P.2d 1016 (Colo.App.1990), reversing the district court's order which reduced the jury's award from $10 million to $6 million. In reinstating the jury's award, the court of appeals first concluded that awards of compensatory damages on both a common-law claim for misappropriation and a statutory claim for deceptive trade practices under the Consumer Protection Act, §§ 6–1–101 to –115, 2 C.R.S. (1973 & 1991 Supp.) (the "Act"), were not duplicative, and concluded secondly that a punitive-damage award on the misappropriation claim was not precluded by an award of statutory treble damages awarded pursuant to section 6–1–113, 2 C.R.S. (1991 Supp.), of the Act. We reverse the judgment of the court of appeals and remand the matter to that court with directions to reinstate the judgment of the district court.

## I.

Hixson Trade Shows, Limited, and Jo Hixson (Hixson) operated gift and jewelry shows in several cities, including Denver.[1] Hixson's Denver show, the "Denver Gift and Jewelry Show," was held at the Denver Merchandise Mart (the Mart). Hixson leased show space from the Mart and then subleased space to exhibitors. Hixson also received revenues from exhibitors' fees. In 1975, Hixson and the Mart entered into a lease which provided for a ten-year term with three five-year options to renew. The renewal option required written notice to the Mart at least two years prior to the lease's expiration.

In August 1985, Hixson had not provided written renewal of the lease. The Mart notified Hixson in writing that the lease was expiring and that the Mart would produce its own gift shows commencing in 1986. The Mart notified show exhibitors that it was concluding its long relationship with Hixson and that it would sponsor and direct its own show, the "Denver Merchandise Mart Gift & Jewelry Show."

In March and August, 1986, Hixson scheduled the "Denver Gift and Jewelry Show" at the Denver Coliseum. These shows were not successful. Subsequently, Hixson sold the Phoenix, Los Angeles, and Honolulu shows. Hixson Trade Shows was dissolved, and its assets were distributed to Jo Hixson.

Four months prior to its dissolution, Hixson filed suit against the Mart, alleging breach of contract, misappropriation, intentional interference with prospective advantage, misrepresentation, unfair competition, and bad faith. Neither the complaint nor the amended complaint contained a claim for deceptive trade practices under the Act. However, they did contain a claim for unfair competition, which essentially mirrored the misappropriation claim.

In April 1988, a jury trial was held. The claim of misappropriation of Hixson's trade name, goodwill, and commercial advantage or opportunity was submitted to the jury. The court also granted Hixson's request that a claim for deceptive trade practices pursuant to sections 6–1–101 to –114, 2 C.R.S. (1973 & 1991 Supp.), be submitted to the jury.[2] Both Hixson's proposed jury

1. The other shows were in Los Angeles, Phoenix, and Honolulu.

2. The other claims submitted to the jury were for fraudulent nondisclosure, breach of contract, and intentional interference with prospec-

instructions and the final jury instructions indicate that the deceptive trade practice claim and the misappropriation claim were predicated on the same conduct. Hixson contended that the Mart (1) had used a similar trade name which confused exhibitors and purchasers as to the source or origin of the show, (2) had led others to believe that the new show was affiliated with or a continuation of the Denver Gift and Jewelry Show, and (3) had informed Hixson's exhibitors and buyers that she would no longer be producing the Denver Gift and Jewelry Show.

Under the Act, Hixson could recover her actual damages, while under the misappropriation claim, she could recover her actual damages or the profits made by the Mart. Hixson offered expert testimony that Hixson's actual damages were between $1.6 and $2.1 million. This expert also testified that the Mart's profits from the alleged misappropriation were $3.9 to $4.7 million. The Mart's expert testified that the actual damages were between $150,000 and $600,-000.

On the misappropriation claim, the jury awarded Hixson $2 million in compensatory damages and $2 million in punitive damages. On the deceptive trade practice claim, they also awarded her $2 million in compensatory damages. The district court, pursuant to section 6–1–113(2)(a), 2 C.R.S. (1991 Supp.), trebled the $2 million deceptive trade practices award. Section 6–1–113(2)(a) provides that any person who engages in a deceptive trade practice "shall be liable in an amount equal to the sum of: (a) Three times the amount of actual damages sustained or two hundred fifty dollars, whichever is greater."

The total judgment at trial was $10 million. In its judgment and order, however, the district court found the compensatory damage awards on the separate claims to be duplicative and reduced the award to $8 million. In Hixson's motion for post-trial orders, she argued that the separate compensatory damage awards were not duplicative because the evidence supported a jury verdict awarding $4 million in compensatory damages. She also argued that the awards of treble damages and punitive damages were not duplicative because these awards served different purposes. The Mart argued, in response, that the district court was correct in finding the compensatory damage awards duplicative. They also argued that Hixson could not recover both the punitive damage award and the treble damage award because both awards served the purposes of punishment and deterrence.

The district court ruled that the compensatory damage awards came from the same "corpus of money" and concluded that the two awards were duplicative. The court stated:

> For whatever reason, the Court is faced with the inescapable conclusion and recollection that we indicated on the verdict forms that the jury should not be concerned with duplication and that we would make that determination post trial.... So the court finds that under either of the two theories or both the award is still 2 million dollars in favor of the plaintiff and against the defendants.

The court also ruled that the punitive damage award was duplicative. The court stated: "But it seems to me that in the final analysis a treble damage award is made to sanction conduct which the legislature feels is inappropriate, verging on dishonesty or excessively sharp business practice."

The court of appeals reversed the district court on both rulings. The court stated that section 6–1–105(3), 2 C.R.S. (1973), provides that deceptive trade practice claims "are in addition to and do not limit the types of unfair trade practices actionable at common law." The court concluded that because evidence established that the jury could find $4 million in damages, "and because of the language of the Act itself," the district court erred in finding the compensatory damage awards duplicative.

The court also held that the punitive damage and treble damage awards were not duplicative. The court concluded that an award of punitive damages arising from

tive advantage. The jury found for the Mart on these three claims.

the same facts as an award of treble damages under the Act was not precluded "because the damage awards serve different purposes." The court noted that punitive damages serve to punish and deter. They did not indicate the purpose of treble damages.

## II.

First, the Mart contends that, because the claims were premised on the same facts and because the purpose of the punitive damages is served by the award of treble damages in this case, Hixson should not be permitted to recover both the treble damage award and the punitive damage award. We agree.

Generally, a plaintiff may not recover both treble damages and punitive damages premised on the same facts because such damage awards serve similar purposes. *See Central Telecommunications, Inc. v. TCI Cablevision, Inc.*, 610 F.Supp. 891, 910 (W.D.Mo.1985) (punitive damages have similar purpose to treble damages and parties may not collect both), *aff'd*, 800 F.2d 711 (8th Cir.1986), *cert. denied*, 480 U.S. 910, 107 S.Ct. 1358, 94 L.Ed.2d 528 (1987); *Eastern Star, Inc. v. Union Bldg. Materials Corp.*, 6 Haw.App. 125, 712 P.2d 1148, 1159 (1985) (awards of treble damages under deceptive trade practices act and punitive damages on fraud claim constitutes improper double recovery); *Ellis v. Northern Star Co.*, 326 N.C. 219, 388 S.E.2d 127, 132 (1990) (plaintiff may recover either treble damages for deceptive trade practices or punitive damages on common-law claim, but not both); *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987) (awards of treble damages under deceptive trade practices act and punitive damages under common-law claim amounts to double recovery); *see also Browning Ferris Indus. v. Kelko Disposal, Inc.*, 492 U.S. 257, 109 S.Ct. 2909, 2913, 106 L.Ed.2d 219 (1989) (affirming punitive damage award from judgment requiring plaintiff to choose between treble damage award and punitive damage award); *Superturf, Inc. v. Monsanto Co.*, 660 F.2d 1275, 1284 (8th Cir.1981) (recovery of treble and punitive damages is duplicative); *John Mohr & Sons, Inc. v. Jahnke*, 55 Wis.2d 402, 198 N.W.2d 363, 367 (1972) (to allow treble damages and punitive damages would amount to double recovery and would violate basic fairness of judicial proceeding).

■ In Colorado, treble and punitive damages serve similar purposes. Treble damages serve to punish, *Carlson v. McCoy*, 193 Colo. 391, 393, 566 P.2d 1073, 1075 (1977), deter, *Carlson*, 193 Colo. at 394, 566 P.2d at 1075, and also promote private enforcement of the statute. *Farmers Group, Inc. v. Williams*, 805 P.2d 419, 427 (Colo.1991); *see also Northern Star Co.*, 388 S.E.2d at 132, and *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397, 404 (1981) (treble damages under deceptive trade practices act are punitive, a deterrent, and encourage private enforcement).[3]

Punitive damages are available pursuant to section 13–21–102, 6A C.R.S. (1987). The general purposes of punitive damages are punishment of the defendant, *Mortgage Finance, Inc. v. Podleski*, 742 P.2d 900, 902 (Colo.1987), and "deterrence against the commission of similar offenses by the defendant and others in the future." *Mince v. Butters*, 200 Colo. 501, 503, 616 P.2d 127, 129 (1980).

■ In this case, the misappropriation claim and deceptive trade practice claim both arose from the Mart's conduct in replacing Hixson's show with its own show. The purposes of punitive damages—punishment and deterrence—are also purposes of treble damage awards in Colorado. Under these circumstances, Hixson may not recover both awards. The district court was correct in concluding that the punitive damages were duplicative in this case.

Hixson contends, however, that she should be allowed to recover both awards because her "entitlement" to these awards

**3.** We have recognized that statutes, like the Act, which provide for both actual and treble damages are both penal and remedial in nature. *Cf. Carlson v. McCoy*, 193 Colo. 391, 393, 566 P.2d 1073, 1075 (1977) (security deposit law providing for actual and treble damages is both penal and remedial in nature).

flows directly from separate statutes. *See* § 6–1–113(2)(a), 2 C.R.S. (1991 Supp.) (allowing treble damages); § 13–21–102, 6 C.R.S. (1973) (authorizing punitive damage awards). Relying on *Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991), Hixson concludes that the plain language of section 6–1–113(2)(a) and section 13–21–102 does not eliminate the application of either statute when a plaintiff has prevailed under both.

In *Farmers,* we addressed whether a claimant can file a common-law bad faith claim in light of the legislature's enactment of a statutory remedy. We held that the statute "is cumulative to, and does not preempt, the common-law tort remedy for bad faith breach of insurance contract." *Id.* at 426.

Our ruling today does not preclude a claimant from filing claims based on other theories of recovery. We simply conclude, as we recognized in *Farmers,* that a claimant may not receive a double recovery from the same act. *See id.* at 427 n. 6.

### III.

Next, the Mart argues that Hixson may not recover compensatory damages on both the misappropriation claim and the deceptive trade practices claim because of the general rule prohibiting double recovery for the same injury. We agree.

■ Generally, a plaintiff may not receive a double recovery for the same wrong. *See Farmers Group, Inc. v. Williams,* 805 P.2d 419, 427 n. 6 (Colo. 1991); *Rusch v. Lincoln–Devore Testing Lab., Inc.,* 698 P.2d 832, 834 (Colo.App. 1984); 22 Am.Jur.2d *Damages* § 35 (1988); *see also Superturf, Inc. v. Monsanto Co.,* 660 F.2d 1275, 1283–84 (8th Cir.1981) (recovering compensatory damages on two claims is duplicative); *Clappier v. Flynn,* 605 F.2d 519, 529 (10th Cir.1979) (plaintiff not entitled to separate compensatory damage awards under separate legal theories); *Westric Battery Co. v. Standard Elec. Co.,* 482 F.2d 1307, 1317 (10th Cir.1973) (double or duplicative recoveries are invalid). This general rule, that a plaintiff may not collect duplicative damages, has been applied to deceptive trade practice actions in other jurisdictions. *See Refuse & Envtl. Sys., Inc. v. Industrial Servs. of America,* 932 F.2d 37, 42–43 (1st Cir.1991) (damages under deceptive trade practices act may not duplicate damages awarded on other grounds); *Atlantic Purchasers, Inc. v. Aircraft Sales, Inc.,* 705 F.2d 712, 716 n. 4 (4th Cir.) (plaintiff not entitled to collect compensatory damages under both common-law theory and deceptive trade practices claim), *cert. denied,* 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983); *Marshall v. Miller,* 47 N.C.App. 530, 268 S.E.2d 97, 103 (1980) (plaintiff may recover damages either for breach of contract or deceptive trade practices, but not both), *modified and aff'd,* 302 N.C. 539, 276 S.E.2d 397 (1981).

■ In *Refuse & Environmental Systems, Inc.,* the plaintiff successfully asserted claims for both deceptive trade practices and abuse of process. Both claims were based on the malicious filing of a previous suit by the defendants. *Refuse,* 932 F.2d at 39. The court recognized that the damages awarded under the deceptive trade practices act may not duplicate the damages awarded under the abuse of process claim if the acts constituting the violation of these claims are not separable. The court concluded that both claims were based on the same facts and that the damages awarded under the act duplicated the damages awarded on the abuse of process claim. *Id.* at 43.

In the present case, the acts constituting the deceptive trade practices act violation are not factually separable from the acts complained of under the misappropriation claim. Both the deceptive trade practices act and the misappropriation claim arise from the same set of facts: the Mart's conduct in replacing Hixson's show with its own show. As Hixson's proposed jury instructions indicate, the alleged wrongdoing that forms the basis of the deceptive trade practices claim is identical to the alleged wrongdoing that forms the basis of the misappropriation claim. Accordingly, the district court was correct in concluding that

the two compensatory damage awards in this case were duplicative.

Hixson argues, however, that she may recover a combination of actual damages under the Act and the Mart's profits under the misappropriation claim, so long as the total damages awarded do not exceed the greater of the actual damages or the Mart's profits. We disagree.

■ Ordinarily, under a common-law misappropriation claim, a plaintiff may recover either its actual damages or the profits earned by the defendant through the use of the misappropriation. *Telex Corp. v. International Business Mach. Corp.*, 510 F.2d 894, 931 (10th Cir.1975) (quoting *Sperry Rand Corp. v. A–T–O, Inc.*, 447 F.2d 1387 (4th Cir.1971)), *cert. dismissed*, 423 U.S. 802, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975). The plaintiff may not recover a combination of the two "because to allow both would permit double recovery." *Id.* Some courts, however, have allowed a plaintiff to recover both actual damages and the defendant's profits when the plaintiff is able to show that the plaintiff's actual damages are separate and distinct from the defendant's profits. *See id.* at 932.

■ In this case, the record indicates that the actual damages are not separate and distinct from the Mart's profits. The actual damages and the Mart's profits both arose out of the Mart's conduct in replacing Hixson's show with its own show. Hixson's expert testified that the actual damage figures were based on three valuations of the Denver show, excluding assets, and a calculation of "historical profits" of the Denver show. The actual damage figures also included Hixson's lost profits in 1986 while trying to produce the coliseum show. The Mart's profits were based on the profits from the five shows after terminating the contract with Hixson and an estimate

of future profits based on the revenues from the Denver show.[4]

Hixson's argument would require a conclusion by the jury that the $2 million awarded under the Act represented the actual damages, while the $2 million awarded under the misappropriation claim represented that part of the Mart's profits which did not overlap with and duplicate Hixson's actual damages. Such a conclusion by the jury would require this court to conclude that they disregarded instruction No. 41, which instructed the jury not to concern themselves with duplication of damages. This instruction provided:

Hixson's case against defendants involves multiple claims, each of which may have caused the same damage to Hixson. You will be asked to determine the amount of actual damage suffered by Hixson on all of her claims. However, for any one claim, you may not award Hixson more than the total actual amount of damages that she has suffered. *In determining the amount of actual damage suffered by Hixson under any one claim, you should not concern yourself that the damages under one claim may be the same as damages suffered under another claim. The Court will only award to Hixson the amount shown by you to be the total actual damage.*

Juries are presumed to have followed the court's instructions. *Schmutz v. Bolles*, 800 P.2d 1307, 1315 (Colo.1990). There is no evidence in the record that indicates the jury did not follow these instructions.

■ Finally, Hixson and the court of appeals contend that the language in section 6–1–105(3), 2 C.R.S. (1973), supports the conclusion that she may recover both compensatory damage awards. Hixson states that the language in section 6–1–105(3), indicates that the Act is supplementary to other claims. Section 6–1–105(3) provides that the "deceptive trade practices listed in

---

4. The district court also concluded that the actual damages were not separate and distinct from the Mart's profits. The court's special verdict form concerning damages on the misappropriation claim instructed the jury that they "may award Hixson the benefits received by defendants as damage under the claim, or actual damages sustained, but not both." Furthermore, in its post-trial order, the district court found that the actual damages and the Mart's profits came from the same "corpus of money."

this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state." This language does not preclude claimants from bringing other causes of action. *See Farmers Group, Inc. v. Williams,* 805 P.2d 419, 426 (Colo. 1991). However, this language does not allow plaintiff to recover on two separate theories based on the same facts. *Id.* at 427 n. 6.

Accordingly, we reverse and remand to the court of appeals with directions to reinstate the judgment of the district court.