20 F.3d 341
 Judy PATE; Ervin L. Pate; and National Fund Raising
Consultants of Arkansas, Inc., an Arkansas
Corporation, Plaintiffs/Appellants,
v.
NATIONAL FUND RAISING CONSULTANTS, INC., a Colorado
Corporation; Maurice Deshazer; and Rozanne
Deshazer, Defendants/Appellees.
 No. 92-3765.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 16, 1993.
Decided March 30, 1994.
 
 Douglas J. Stanley, Little Rock, AR, argued (Peter B. Heister, on the brief), for appellant.
 David P. Hersh, Denver, CO, argued (James F. Parr, on the brief), for appellee.
 Before MAGILL, Circuit Judge, LAY, Senior Circuit Judge, and HANSEN, Circuit Judge.
 HANSEN, Circuit Judge.
 
 
 1
 Plaintiffs appeal from the district court's order entering both a monetary judgment and a declaratory judgment on defendants' counterclaim for breach of franchise agreement. The plaintiffs assert that there was insufficient evidence to support the jury's verdict on defendants' counterclaim for breach of the franchise agreement and that the district court erred in granting declaratory relief because, among other things, it resulted in a double recovery for the defendants. The plaintiffs also appeal the district court's order directing a verdict against them on their claims to rescind the franchise agreement. We affirm in part and reverse in part.
 
 I.
 
 2
 Defendant National Fund Raising Consultants (NFRC) is a Colorado corporation that assists not-for-profit organizations in "pizza-make" fundraisers. Defendants Maurice and Rozanne Deshazer are stockholders of NFRC. On January 19, 1988, plaintiff Judy Pate, a resident of Arkansas, signed on with NFRC as an "Area Manager" (salesperson) under a "consultant agreement." The agreement provided her with a commission for each pizza made and sold at the fundraisers she sponsored. The agreement also provided that the operation and training materials NFRC gave her were NFRC "trade secrets" and that she would be subject to liability if she disclosed them.
 
 
 3
 Judy Pate served successfully as an "Area Manager" for the next 18 months and was named both "Rookie Manager of the Year" and "Area Manager of the Year." On July 1, 1989, a corporation owned by Judy Pate and her husband, plaintiff Ervin Pate, signed a franchise agreement with NFRC. The Pates' corporation tendered the $20,000 "initial fee" to NFRC and began to operate National Fund Raising Consultants of Arkansas, Inc. (NFRC-Ark).
 
 
 4
 Under the franchise agreement, NFRC-Ark received the exclusive right to operate an NFRC franchise in the State of Arkansas and the materials and equipment for the operation. In exchange, the Pates' corporation agreed to pay royalties to NFRC. The franchise agreement also protected NFRC's trade secrets and confidential information from disclosure. Paragraph 28 of the franchise agreement specifically provided that if the franchisee went into competition with NFRC, the franchisee would be required to compensate NFRC under a predetermined payment schedule for the use of the proprietary information the franchisee received from NFRC.[1]
 
 
 5
 While NFRC-Ark was a very successful operation, the Pates became interested in forming another fundraising operation not affiliated with NFRC. The Pates explored the idea of rescinding the NFRC franchise agreement and eventually stopped paying NFRC royalties. The Pates and NFRC-Ark then filed this suit on August 15, 1991, seeking to rescind the franchise agreement on the grounds of failure of consideration and fraud. NFRC counterclaimed for breach of the franchise contract, alleging that NFRC-Ark had disclosed NFRC trade secrets or proprietary information in violation of the contract. NFRC sought damages and a declaratory judgment.
 
 
 6
 The day after filing the lawsuit, the Pates incorporated Pizza People, U.S.A., a business closely resembling NFRC-Ark. Pizza People, U.S.A. employed many people who worked for NFRC-Ark. Pizza People, U.S.A. also used the training manual, business plans, and documents NFRC-Ark acquired from NFRC. The district court denied NFRC's motion to add Pizza People, U.S.A. as a defendant to the counterclaims in this case.
 
 
 7
 At trial, the district court directed a verdict against the Pates and NFRC-Ark on their claims to rescind the contract. At the close of the evidence on NFRC's counterclaim, the district court dismissed the Pates from the lawsuit. The jury then returned a $250,000 verdict against NFRC-Ark for breach of the franchise contract. The district court entered judgment against NFRC-Ark on the actual damage claim. The district court also entered a declaratory judgment against NFRC-Ark finding that paragraph 28 of the franchise agreement would continue to apply against NFRC-Ark, its shareholders, and its employees. The Pates and NFRC-Ark appealed.
 
 II.
 
 8
 Colorado law applies in this diversity case pursuant to a choice of law provision in the franchise agreement. This court reviews de novo the district court's construction of state law in a diversity case. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).
 
 
 9
 NFRC-Ark first argues that the district court's judgment awarding actual damages on NFRC's counterclaim for breach of contract for NFRC-Ark's disclosure of trade secrets or proprietary information should be reversed. NFRC-Ark argued in a Rule 50 motion for judgment as a matter of law before the district court, and similarly argues here on appeal, that NFRC failed to present sufficient evidence to establish its claim.
 
 
 10
 In reviewing the district court's denial of a motion for judgment as a matter of law, we examine the record in the light most favorable to the nonmoving party. Kirchoff v. American Cas. Co., 997 F.2d 401, 404 (8th Cir.1993). "A motion for judgment as a matter of law should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining [the prevailing party's] position." First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins., 2 F.3d 801, 808-09 (8th Cir.1993) (internal quotations omitted).
 
 
 11
 Here, the district court instructed the jury that in order to find NFRC-Ark liable for breach of the franchise contract, NFRC was required to prove that NFRC-Ark obtained trade secrets or proprietary information from NFRC and that NFRC-Ark or its employees or shareholders used those materials in forming a competing business. (Appellant's App. at A-69.) NFRC-Ark argues that it did not receive any trade secrets or proprietary information from NFRC. The jury instructions defined "trade secrets" using the definition of "trade secrets" in Colorado law as encompassing a wide variety of items including any process, procedure, or other valuable and secret business materials. (Id.) See Colo.Rev.Stat.Ann. Sec. 7-74-102(4) (West 1990). The jury instructions further provided that "[t]o be a trade secret the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." (Appellant's App. at A-69.) NFRC-Ark does not appeal the giving of these instructions.
 
 
 12
 Under Colorado law, the question of whether something constitutes a trade secret is a question of fact for the trial court. Colorado Supply Co. v. Stewart, 797 P.2d 1303, 1306 (Colo.App.1990). As the district court noted, the jury, at a minimum, could have considered NFRC's materials to be a "process," which is specifically defined as a trade secret in the instructions and under Colorado law. Moreover, both the franchise agreement and Judy Pate's original consultant agreement demonstrate that NFRC took measures to prevent the secrets from becoming available to persons outside the NFRC organization. On this record, the district court specifically found that the evidence established these items as trade secrets.
 
 
 13
 NFRC-Ark notes that Colorado courts have used six factors to guide their determination of whether a trade secret exists:
 
 
 14
 (1) the extent to which the information is known outside the business; (2) the extent to which it is known inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.
 
 
 15
 Id. at 1306. NFRC-Ark argues that the first, fourth, and sixth factors are not satisfied and, therefore, the district court's judgment sustaining the jury's verdict should be reversed.
 
 
 16
 We first point out that this list of factors provides only "guidance"; it is not a multi-part test requiring each element to be satisfied. Nonetheless, when viewed in a light most favorable to NFRC, there is sufficient evidence in the record which the jury could have reasonably believed to satisfy the first, fourth, and sixth factors laid out in Stewart. Maurice Deshazer testified about the unique aspects of the specialized process NFRC utilizes. (Tr. at 47, 82, 85.) The materials themselves are a collection of time-and-cost-saving measures, which the Pates used to generate substantial income in a short period of time. (Tr. at 259-60.) Deshazer testified that without the NFRC materials and training, it would be very difficult to duplicate the multi-step NFRC process. (Tr. at 46-47.)
 
 
 17
 NFRC-Ark also asks us to follow an unpublished decision of a state district court in Washington finding that the materials NFRC seeks to protect here cannot be considered trade secrets under Washington law. Even if we were to agree with the Washington court's conclusion, we still must affirm the district court's conclusion in this case. First, Colorado law governs in this case, not Washington law. Second, and most importantly, the question of whether a trade secret exists is largely a factual question, and the evidence in this record supports the conclusion that the jury reached and that the district judge approved. Hence, we affirm the district court's decision.
 
 III.
 
 18
 NFRC-Ark next raises a number of arguments to support its assertion that the district court erred in entering a declaratory judgment in this case.[2] NFRC-Ark argues that the district court erred in issuing the declaratory judgment because: (A) NFRC is receiving a double recovery by obtaining both the declaratory judgment award of future damages and the actual damage award; (B) NFRC elected to pursue actual damages instead; (C) Paragraph 28 of the franchise agreement is an unenforceable liquidated damages provision; and (D) Paragraph 28 is void because it operates as an unenforceable covenant not to compete.
 
 
 19
 We first address plaintiffs' assertion that the declaratory judgment results in a double recovery. In Colorado "a plaintiff may not receive a double recovery for the same wrong." Lexton-Ancira Real Estate Fund, 1972 v. Heller, 826 P.2d 819, 823 (Colo.1992). In misappropriation cases, which are somewhat analogous to this case, "a plaintiff may recover either their [sic] actual damages or the profits earned by the defendant through the use of the misappropriation." Id. at 824. However, "[t]he plaintiff may not recover a combination of the two because to allow both would permit double recovery." Id. (internal quotations omitted).
 
 
 20
 The Pates and NFRC-Ark claim that the declaratory judgment is an impermissible "double recovery" because the court already entered judgment on a jury verdict for actual damages. They contend that the declaratory judgment directs them to pay over profits to NFRC in addition to the actual damage award, resulting in two payments for the one harm.
 
 
 21
 NFRC argues that the damage judgment and the declaratory judgment are directed to two different parties. NFRC argues that the actual damage award is directed at NFRC-Ark and the declaratory damage award is directed primarily at the Pates, as shareholders of NFRC-Ark. NFRC's argument is unpersuasive. The declaratory judgment is not directed at the Pates. The declaratory judgment applies by its very language only to NFRC-Ark. Moreover, the district court already had dismissed the Pates from the case when it entered the declaratory judgment. While the terms of paragraph 28 of the franchise agreement required NFRC-Ark to cause its shareholders and employees to be bound by paragraph 28, there is no showing in the record that NFRC-Ark did so. Consequently, the Pates as individual shareholders of NFRC-Ark can not be held individually responsible in this action for the payments of the shares of gross revenue outlined in paragraph 28 and accordingly, the court's declaratory judgment can not extend to them as individuals. The Pates were not named as defendants to the counterclaim for declaratory relief. The declaratory judgment could only declare the respective rights of the parties to the franchise agreement and the Pates as individuals were not parties to it.
 
 
 22
 NFRC also asserts that the actual damage award is addressed only to retrospective or historical losses and that the declaratory judgment is addressed to prospective activity. Under Colorado law, a party can recover both actual damages and profits when that party can show that its actual damages are separate and distinct from the award of lost profits. Id. NFRC argues that the actual damages covered only the historical breach of contract.
 
 
 23
 We find that the actual damage award covered both NFRC's historical and prospective losses. The jury was instructed that "[t]o the extent that actual damages have been proved by the evidence, you shall award as actual damages the amount of money defendants [NFRC] would have received in royalty payments from the plaintiff had the plaintiff not breached the Franchise Agreement." (Appellant's App. at A-71.) The defendant's damages expert testified and provided documentary evidence (Id. at A-58 to A-61), that NFRC's total damages in the case were between $218,000 and $285,000. That estimate covered the years 1992 through 1996. Any obligation under paragraph 28 would expire five years after termination of the franchise agreement. Termination by breach occurred in 1991 and the five-year period would expire in 1996. The jury awarded $250,000 in actual damages, which indicates that the award was for total damages, past and future, that NFRC sustained. Hence, we find that the declaratory judgment results in a double damage award and should be reversed. We need not address NFRC-Ark's other arguments pertaining to the declaratory judgment.
 
 IV.
 
 24
 Finally, NFRC-Ark argues that the district court erred in directing a verdict against the Pates and NFRC-Ark on their claims to rescind the franchise contract. They argue that there was sufficient evidence to send those claims to the jury. We disagree.
 
 
 25
 The Pates and NFRC-Ark first argued that the franchise contract should be rescinded for failure of consideration because NFRC-Ark never received any "trade secrets" as promised under the agreement. As the district court noted, the Pates and NFRC-Ark were required to show a total failure of consideration to prevail. See Luby v. Jefferson County Bank, 28 Colo.App. 441, 476 P.2d 292, 294 (1970) ("A benefit to the promisor or a detriment to the promisee can constitute consideration, however slight."). The unrefuted evidence indicates that NFRC-Ark benefitted from the NFRC process, to which NFRC-Ark received access under the franchise agreement. Hence, we agree with the district court that the Pates and NFRC-Ark failed to demonstrate a total failure of consideration.
 
 
 26
 The Pates and NFRC-Ark also contended that the contract should be rescinded because NFRC misrepresented to NFRC-Ark that NFRC-Ark was receiving trade secrets when NFRC knew it was providing no trade secrets. The district court found that there was no evidence of any knowingly false representations. Moreover, even assuming that there was evidence of misrepresentation, the district court concluded that there was no evidence of justifiable reliance, especially given the fact that Judy Pate had worked in the NFRC business organization for 18 months as a manager and knew exactly what she was getting when she entered into the franchise agreement. Accordingly, the district court found that the Pates and NFRC-Ark failed to establish a prima facie case of misrepresentation. We agree with the district court.
 
 V.
 
 27
 We affirm the district court's judgment on the jury's verdict awarding NFRC $250,000 in actual damages. We reverse the district court's entry of a declaratory judgment because it results in a double recovery against NFRC-Ark. We affirm the district court's order granting a directed verdict against NFRC-Ark and the Pates on their claims to rescind the franchise agreement.
 
 
 
 [1]
 Paragraph 28 of the Franchise Agreement provides:
 The Franchisee agrees and acknowledges that over the course of his working with NFRC he will gain certain knowledge, experience, training, contacts and abilities relating to NFRC's business and industry, some of which will constitute NFRC's trade secrets, and some of which constitute confidential information of NFRC (the foregoing hereinafter collectively referred to as "Proprietary Information"). After the term of this Agreement, nothing herein shall prevent the Franchisee from engaging in acts which may directly or indirectly be in competition with the business of NFRC, or from engaging in services of the nature rendered by the Franchisee during the term hereof. However, in order to compensate NFRC for the Proprietary Information which the Franchisee will gain or to which the Franchisee will otherwise be exposed, should the Franchisee enter into such competition, or otherwise utilize the Proprietary Information for its own benefit or for the benefit of another, then the Franchisee shall promptly pay, in cash, without offset, a percentage of the gross revenues received directly or indirectly from such competition or the use of such Proprietary Information, determined by reference to the following schedule:
 Full Calendar Months Percentage of
 Since Termination Gross Revenues
 0--24 45%
 25--26 40%
 37--48 35%
 49--60 30%
 Whether the Franchisee is a sole proprietorship, a corporation, a partnership or other legal entity, it shall cause its stockholders, partners, and employees, as the case may be, to be bound by these covenants, shall enforce the same at its own cost and expense, and shall provide NFRC with satisfactory compliance herewith from time to time, as requested by NFRC.
 
 
 [2]
 The declaratory judgment provided:
 It is the Judgment of the Court that the rights, responsibilities, duties, relationships, and entitlements of the parties to the Franchise Agreement (Trial Exhibit D), National Fund Raising Consultants, Inc. (defendant) and National Fund Raising Consultants of Arkansas, Inc. (plaintiff) relating to Count IV of the counterclaim are as follows:
 
 
 [1]
 "Proprietary Information" is defined in the Franchise Agreement as the knowledge, experience, training, contacts and abilities a consultant gains over the course of working with National Fund Raising Consultants, Inc. relating to National Fund Raising Consultants, Inc.'s business and industry, some of which will constitute National Fund Raising Consultants, Inc.'s trade secrets and some of which will constitute confidential information of National Fund Raising Consultants, Inc
 
 
 [2]
 The knowledge, experience, training, contacts and abilities the plaintiff gained over the course of working with National Fund Raising Consultants, Inc. relating to National Fund Raising Consultants, Inc.'s business and industry, did, in fact, constitute proprietary information as described in paragraph twenty-eight (28) of the Franchise Agreement, some of which constituted confidential information of National Fund Raising Consultants, Inc
 
 
 [3]
 Any utilization of said proprietary information by the plaintiff, or by the plaintiff's partners, stockholders or employees, in developing a competing fund raising business would necessitate the payment of a percentage of the gross revenues received directly or indirectly from such competition, to National Fund Raising Consultants, Inc., in accordance with the schedule of payments and terms of paragraph twenty-eight (28) of the Franchise Agreement
 All other claims by any parties, including Counts I, II, III, IV, and V of the complaint, and Counts II, III, V, and VI if the counterclaim are hereby dismissed with prejudice. All pending motions are now moot.