24CA0474 Stern v Farncombe 03-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0474
Boulder County District Court No. 21CV30913
Honorable Stephen A. Groome, Judge

Daniel B. Stern,

Plaintiff-Appellee,

v.

Matthew W. Farncombe, Aurum LLC, a Colorado limited liability company, and 16518808 LLC, a Colorado limited liability company,

Defendants-Appellants.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE GROVE
Harris and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

Gray Bugos & Schroeder LLC, J. Lee Gray, Littleton, Colorado, for Plaintiff-Appellee

Faegre Drinker Biddle & Reath LLP, Desmonne A. Bennett, Brian J. Paul, Lawrence G. Scarborough, Maria S. Downham, Denver, Colorado, for Defendants-Appellants

¶ 1　　In this dispute over the start-up and operation of a home technology company, defendants, Matthew W. Farncombe, Aurum LLC (Aurum), and 16518808 LLC (1651), appeal the district court's judgment entered in favor of plaintiff, Daniel B. Stern, after a jury trial.　The district court's final judgment reduced the damages the jury awarded to defendants for their breach of contract counterclaim and ruled in favor of Stern on an equitable claim for constructive fraud that was not submitted to the jury.　We reverse the judgment and remand the case with directions.

## I.　Background

¶ 2　　The dispute between Stern and defendants concerns Aurum LLC, a home technology company that Stern and Farncombe formed in 2016.　In April of that year, 1651 (which, according to defendants, is "an entity in which Farncombe has an ultimate ownership stake") made a capital contribution of $500,000 to Aurum.

¶ 3　　That same month, Farncombe lent $500,000 to Stern; a promissory note (the April 2016 note) explained that the loan "will be repaid in Full on or before 02/24/2021" at which point Stern "shall be entitled to 50% equity of Aurum LLC . . . per the 'Aurum

Agreement'". The record does not include a written "Aurum Agreement." Nonetheless, according to Stern, the arrangement described in the April 2016 note reflected his and Farncombe's understanding that Stern "would invest his sweat equity to build revenue for the business" and ensured that Stern would have "skin in the game." Specifically, Stern maintains that the "Aurum Agreement" cited in the April 2016 note referred to "Farncombe['s] indicat[ion] that the note would be repaid through company proceeds" rather than by Stern personally.

¶ 4      In September 2016, Farncombe (via MWF Investments Corp., "another entity Farncombe owns," according to defendants) lent $500,000 to Aurum; a second promissory note (the September 2016 note) explained that the loan "will be repaid in full [by Aurum] on or before 02/24/2021."

¶ 5      Stern testified that he initially earned an annual salary of $300,000 while holding four positions at Aurum: CEO, president, managing member, and head of sales. The company was not immediately profitable, however, and in April 2021, Farncombe and Stern signed a new employment agreement that demoted Stern to sales manager with a base annual salary of $310,400. Around the

2

same time, the parties also amended the "Aurum LLC Equity Conversion Agreement" and executed a third promissory note (April 2021 note) that refinanced the $732,099 that Stern owed to Farncombe (Aurum had made no payments on the April 2016 note) and secured Stern's financial obligation under the refinanced promissory note by a deed of trust on his home.

¶ 6    Farncombe remained dissatisfied with Stern's performance, and in the fall of 2021, he placed Stern on administrative leave before firing him.  That December, Stern commenced this litigation.

¶ 7    Stern's amended complaint sought to quiet title to his home and nullify several agreements between Stern and defendants, including the April 2016 note.  Stern alleged several causes of action, of which the following are relevant to this appeal: (1) fraud against defendants; (2) constructive fraud against defendants (an equitable claim); (3) negligent misrepresentation against defendants; and (4) breach of fiduciary duty against Farncombe. Each cause of action centered on Stern's contention that he was led to believe that the documents he signed

> were necessary for [Stern] to have a one-half ownership interest in [Aurum], that [Stern] would obtain a one-half ownership interest in

3

[Aurum] based on his "sweat equity" instead of financial contribution, and that the $500,000 loan purportedly made on [Stern's] behalf to [Aurum] would be paid by [Aurum] instead of personally by [Stern].

¶ 8 Defendants asserted several affirmative defenses and counterclaims. The affirmative defenses relevant to this appeal included the following: (1) the absence of any duty owed to Stern; (2) waiver, estoppel, and ratification; (3) setoff; (4) statute of frauds; and (5) failure to mitigate damages. The counterclaims relevant to this appeal were (1) breach of fiduciary duty and (2) breach of contract.

¶ 9 After the district court granted summary judgment on several matters not before us, the case proceeded to trial. As relevant to this appeal, the jury's verdict reflected the following:

- Stern did not prevail on his negligent misrepresentation claim.

- Stern did not prevail on his fraud claim (although the jury found that Farncombe had committed fraud, it also found in Farncombe's favor on his defenses of ratification and statute of limitations).

- Stern prevailed on his breach of fiduciary duty claim, receiving a damages award of $269,000 (the jury found in Farncombe's favor on his defense of failure to mitigate damages and reduced the damages award accordingly).

- Defendants prevailed on their breach of contract counterclaim, receiving a damages award of $1.678 million.

- Defendants prevailed on their breach of fiduciary duty counterclaim, receiving a damages award of $0.

¶ 10    The district court entered judgment reflecting the jury's verdict. With Stern's equitable claim of constructive fraud still outstanding, the parties filed competing post-trial motions — both initially styled as C.R.C.P. 59 motions[1] — requesting that the district court rule on that claim in their favor. In his post-trial motion, Stern requested $7.3 million in damages, $7 million of which "represent[ed] the value of half of the company that [Stern] lost due to Farncombe's misrepresentations," and $300,000 of

---

[1] Later, Stern filed a motion asking the court to convert his "Rule 59 motion to Amend Judgment filed on December 5, 2023, to a 'Motion for Entry of Judgment under Rule 58' on the outstanding constructive fraud claim."

which "represent[ed] six years of a $50,000 per year salary reduction" that Stern accepted when he departed his previous position to work for Aurum. In addition, Stern's post-trial motion sought to reduce the damages the jury awarded to defendants for their successful breach of contract counterclaim from $1.678 million to $807,111 (the amount Stern owed on the April 2016 promissory note) because Aurum's losses for breach of contract were expressly limited by the parties' contract "to the amount of [Stern's] direct or indirect ownership of Aurum, which is undisputedly zero."

¶ 11    The district court later ruled on the parties' post-trial motions and entered final judgment on all claims. Ruling in Stern's favor on his constructive fraud claim, the district court awarded him $1.5 million — half the amount that Stern testified Farncombe told him Aurum was worth in 2017. The court declined to award Stern the $7 million that he sought because "that would result in a windfall for [Stern] especially in light of the jury finding that [Stern] breached his contract." The court also granted Stern's request to apply the contract's "liability limitation provision" and reduced defendants' damages to $807,111. Finally, the court denied

defendants' request for attorney fees and costs "[s]ince both parties prevailed on a portion of their respective claims."

## II. Jurisdiction to Enter Final Judgment

¶ 12   We address, at the outset, defendants' contention that the district court waited too long to rule on the parties' post-trial motions and therefore lost jurisdiction to rule in Stern's favor on his constructive fraud claim or to reduce the jury's damages award for Stern's breach of contract.

¶ 13   According to defendants, the district court's judgment became final on December 6, 2023, when it entered its "Amended Entry of Judgment Per C.R.C.P. Rule 58(a)" (December 6 order) that reflected both the jury's verdicts and the court's pretrial rulings on summary judgment.  The December 6 order did not address Stern's constructive fraud claim.  Even so, defendants contend the court's judgment was final as of that date because the outcome of the constructive fraud claim was dictated by the jury's verdicts on the issues that were submitted to it, meaning that "[a]ll that was left was for the court to make a clerical notation" to reflect that defendants had prevailed on the constructive fraud claim.  Thus, defendants argue, even though the post-trial motions were filed

7

*before* the court entered its December 6 order (which did not, in any event, address the constructive fraud claim), the parties' competing post-trial motions were properly cognizable under C.R.C.P. 59. This matters, according to defendants, because the court did not rule on those motions until it issued its "Second Amended Entry of Judgment Per C.R.C.P. 58(a)" on February 27, 2024 (February 27 judgment) — eighty-four days after the parties filed their competing post-trial motions invoking C.R.C.P. 59. As defendants see it, the parties' post-trial motions were "deemed denied" on February 6, 2024 (i.e., once sixty-three days had passed after the motions' filing without a ruling, *see* C.R.C.P. 59(j)), meaning that the court's February 27 judgment was of no effect. Ultimately, the defendants maintain that because the district court lost jurisdiction to amend its December 6 order by failing to timely address the parties' post-trial motions, the February 27 judgment is void and the December 6 order — which does not address the constructive fraud claim — controls.

¶ 14    We are unpersuaded. Contrary to defendants' assertion, the final judgment was the February 27 judgment, the written judgment signed by the district court that disposed of all the claims

8

against all parties. *See* C.R.C.P. 58(a), 54(b). Regardless of its title, the December 6 order was not final because it adjudicated "fewer than all the claims or the rights and liabilities of fewer than all the parties" and therefore did "not terminate the action as to any of the claims, or parties." C.R.C.P. 54(b); *see Smeal v. Oldenettel*, 814 P.2d 904, 908-09 (Colo. 1991). The fact that the parties invoked C.R.C.P. 59 in their subsequent competing post-trial motions is inconsequential. *See Church v. Am. Standard Ins. Co. of Wis.*, 742 P.2d 971, 972 (Colo. App. 1987) ("Where motions filed following a jury trial pertain to unresolved, substantive claims raised in the complaint, they are not actually directed at obtaining post-judgment relief, and accordingly, the provisions of C.R.C.P. 59 do not apply."). Accordingly, the sixty-three-day deadline for the determination of post-trial motions mandated by C.R.C.P. 59(j) was inapplicable. The district court had jurisdiction to, and did, enter final judgment when it issued its February 27 judgment.

### III.   Constructive Fraud

¶ 15     Turning to the merits, defendants challenge the district court's ruling on the constructive fraud claim from several different angles. Because we agree with defendants that the damages the court

9

awarded Stern for constructive fraud were duplicative of — and limited by — the damages that the jury awarded Stern on his breach of fiduciary duty claim, we need not reach defendants' remaining challenges to the constructive fraud ruling.

## A. Additional Facts

¶ 16 In alleging that Farncombe breached the fiduciary duty he owed to Stern, Stern's amended complaint described this duty as arising "in the formation of the joint venture." The complaint claimed that "Farncombe breached his fiduciary duties to [Stern] by . . . falsely representing that [Stern] would earn his 50% ownership interest in [Aurum] by 'sweat equity' instead of a financial contribution and that [Aurum] would repay the $500,000 investment purportedly made on behalf of [Stern]." Per the complaint, "Farncombe also breached his fiduciary duties by requiring [Stern] to sign" the April 2016 note, the April 2021 note, and the deed of trust "when Farncombe did not loan any funds or provide anything of value to [Stern]." And, the complaint stated, "Farncombe's breach has caused and will cause [Stern] damages in an amount to be proven at trial."

¶ 17    Similarly, Stern alleged that defendants committed constructive fraud "during discussions leading up to and at the time [Stern] signed the April 2016 Note, the Equity Conversion Agreement, and 2017 [Line of Credit] Agreement."  The complaint further stated,

> Farncombe, acting on behalf of himself and the other [defendants], falsely represented to [Stern] that these documents were necessary for [Stern] to have a one-half ownership interest in [Aurum], that [Stern] would obtain a one-half ownership interest in [Aurum] based on his "sweat equity" instead of financial contribution, and that the $500,000 loan purportedly made on his behalf to [Aurum] would be paid by [Aurum] instead of personally by [Stern].

¶ 18    In the portion of the trial management order where the parties itemized the damages and relief sought, Stern specified "rescission damages," "[m]onetary loss . . . due to defamatory statements," "[c]osts incurred in pursuing this litigation to have . . . Farncombe's invalid Deed of Trust removed," "[n]oneconomic [d]amages due to reputational harm," and "[p]rejudgment and postjudgment interest on all damages awarded."  He described the remaining $7 million in desired damages as "[c]onsequential damages related to the loss of

11

50% value of Aurum, in the event that the agreements at issue in this case are not rescinded."

¶ 19     The jury instructions at trial explained the following:

- Stern asserted a claim for "breach of fiduciary duty based on a confidential relationship against . . . Farncombe related to the startup of Aurum."

- Defendants asserted an affirmative defense of waiver to Stern's claims for fraud, negligent misrepresentation, and breach of fiduciary duty, which applied to the signing of the April 2016 note.

- Defendants asserted setoff as an affirmative defense to Stern's claims for fraud, negligent misrepresentation, and breach of fiduciary duty, which applied in part if the jury found that "[Stern's] damages [we]re based on [his] entitlement to equity in Aurum . . . or an equivalent to an equity interest in Aurum."

- Defendants asserted an affirmative defense of failure to mitigate damages to Stern's claims for fraud, negligent misrepresentation, and breach of fiduciary duty, which applied in part if the jury found that "[Stern] failed to

take reasonable steps to cause Aurum to be profitable so that the profits could be used to repay the [promissory notes]."

- Stern "sued for the same damages and losses on three different claims for relief," which were "fraud, negligent misrepresentation, and breach of fiduciary duty," and thus, "[i]f [the jury found] for [Stern] on more than one claim for relief, [it could] award him damages only once for the same damages and losses."

- In determining Stern's damages for his breach of fiduciary duty claim, the jury had to consider both economic and noneconomic losses.

¶ 20    The jury found in favor of Stern on his breach of fiduciary duty claim. In assessing damages for this claim, however, the jury found in favor of Farncombe on his failure to mitigate defense and, taking that into account, awarded Stern $269,000.

¶ 21    Two months later, the district court ruled in Stern's favor on his constructive fraud claim and awarded him $1.5 million in damages. The court explained that the damages award represented

one half of Aurum's value based on the valuation that Stern testified Farncombe provided him in 2017.

B. Standard of Review and Applicable Law

¶ 22 Generally, determining the amount of damages is within the trial court's discretion, and its decision will not be overturned absent an abuse of that discretion. *McDonald's Corp. v. Brentwood Ctr., Ltd.*, 942 P.2d 1308, 1311 (Colo. App. 1997). But the proper measure of damages is a question of law subject to de novo review. *Taylor Morrison of Colo., Inc. v. Terracon Consultants, Inc.*, 2017 COA 64, ¶ 23.

¶ 23 A plaintiff may not receive a double recovery for the same injuries or losses arising from the same conduct. *Lexton-Ancira Real Est. Fund, 1972 v. Heller*, 826 P.2d 819, 823 (Colo. 1992); *Quist v. Specialties Supply Co.*, 12 P.3d 863, 866 (Colo. App. 2000). Double recovery occurs when a plaintiff is compensated for the same wrong under different theories or for equivalent damages based on the same acts. *Lexton-Ancira*, 826 P.2d at 824; *see also Farmers Grp., Inc. v. Williams*, 805 P.2d 419, 426 n.9 (Colo. 1991) (insured could not receive double recovery for the same wrong under both a statutory bad faith claim and a common law tort

14

claim); *DeBose v. Bear Valley Church of Christ*, 890 P.2d 214, 223 (Colo. App. 1994) (jury's award for breach of fiduciary duty that included damages jury had already awarded for extreme and outrageous conduct claims were improperly duplicative), *rev'd on other grounds*, 928 P.2d 1315 (Colo. 1996). This general rule prohibiting double recovery for the same injury or losses applies in cases involving multiple defendants as well as in cases involving multiple claims against a single defendant. *Quist*, 12 P.3d at 866.

## C. Analysis

¶ 24 Although Stern's claims for breach of fiduciary duty and constructive fraud were not identical, both claims overlapped such that they alleged the same injuries or losses arising from the same conduct. For both claims, Stern's amended complaint sought monetary damages for injuries that he alleged arose during the formation of Aurum — specifically, Farncombe's misrepresentations regarding Stern's ownership interest in Aurum and the repayment of the April 2016 note. In the trial management order, Stern requested damages of $7 million in "[c]onsequential damages related to the loss of 50% value of Aurum," without linking that amount to any particular cause of action. The jury instructions

expressly stated that Stern "sued for the same damages and losses" on his claims for fraud, negligent misrepresentation, and breach of fiduciary duty, and that the jury was therefore permitted to award Stern damages "only once for the same damages and losses." And Stern's post-trial motion sought "$7,000,000 as damages for the constructive fraud claim, which represents the value of half of the company that he lost due to Farncombe's misrepresentations."

¶ 25     Despite this extensive overlap and the jury's verdict for Stern on his breach of fiduciary duty claim (which included $269,000 in damages), the district court ruled for Stern on his constructive fraud claim and awarded him $1.5 million in damages as compensation for his loss of a one-half ownership interest in Aurum. Because of the jury's earlier verdict, however — which had valued Stern's interest in the company at a maximum of $269,000 via its findings on the breach of fiduciary duty claim — the district court's damages award gave Stern an impermissible double recovery.

¶ 26     Stern argues on appeal that the damages awarded by the district court were not duplicative of the damages awarded by the jury. According to Stern, although the jury instructions required

16

the jury to consider both economic and noneconomic losses when awarding damages for the breach of fiduciary duty claim, "the jury's damage award may have consisted solely of the non-economic damages Stern was seeking on his breach of fiduciary duty claim." Therefore, he contends, the district court's economic damages award for the same injuries or losses arising from the same conduct was not duplicative.

¶ 27 In support of his contention, Stern points out that the jury is presumed to have followed the instructions before it. Yet if we were to accept his argument, we would have to reach the opposite conclusion. Indeed, we cannot interpret the jury's verdict as awarding noneconomic damages alone without overlooking the fact that the court instructed the jury to take both economic and noneconomic losses into account. And while the absence of any evidence to the contrary is sufficient for us to presume that the jury did in fact follow the court's instructions to award damages encompassing economic and noneconomic losses, that conclusion is further buoyed by the jury's finding in favor of Farncombe on his failure to mitigate defense — which was applicable only to economic damages.

¶ 28    Stern also argues that his breach of fiduciary duty and constructive fraud claims were "factually separable" and therefore not duplicative.  This is so, according to Stern, because the facts supporting the former were limited to pre-April 2016 conduct while the facts supporting the latter were "also based on conduct that occurred after Stern signed the [April 2016 note]."  However, the post-April 2016 conduct that supposedly distinguished the damages awarded for these claims appears only in Stern's one-sentence assertion in his post-trial motion regarding his constructive fraud claim that "even after having retained counsel [in 2017], Stern continued to trust Farncombe and his representations when he signed the later documents in 2017."  This lone assertion — when both claims were otherwise consistently grouped together, dealt with the April 2016 note and sought the same damages for Stern's claimed ownership interest in Aurum — is insufficient to differentiate these claims such that the damages awarded for both were not duplicative.  This is especially true because the district court's order granting Stern's constructive fraud claim made no such distinction between the conduct forming

the basis of each claim and instead discussed at length the conduct leading up to the signing of the April 2016 note.

¶ 29   Accordingly, we conclude that the district court erroneously awarded Stern duplicative damages when it awarded him damages for his constructive fraud claim after the jury had already awarded Stern damages for his breach of fiduciary duty claim.  In short, the jury found that Stern's interest in the company was worth, at most, $269,000.  Irrespective of the merits of Stern's constructive fraud claim, the court could not award him any more than the jury had already determined his interest was worth.

¶ 30   Our conclusion eliminates the need to reach defendants' remaining challenges to the constructive fraud ruling.  We note, however, that we would arrive at the same destination if we accepted defendants' contention that the jury's finding in their favor on Stern's claims for negligent misrepresentation and fraud foreclosed the district court's ruling in Stern's favor on his constructive fraud claim.  Under either approach, Stern's damages for losing his ownership interest in Aurum would be limited to the jury's award of $269,000: The district court could have either ruled against Stern on the constructive fraud claim, or it could have ruled

in favor of Stern on that claim but declined to award him additional damages in light of the jury's determination.

## IV.    Reduction of Damages

¶ 31    Defendants next contend that the district court erroneously reduced the jury's damages award because the court based its ruling on an argument that Stern waived.  We agree.

### A.    Additional Facts

¶ 32    In addition to seeking a favorable ruling on his constructive fraud claim, Stern's post-trial motion requested that the district court reduce the jury's damages award on defendants' breach of contract counterclaim.  Specifically, Stern sought to reduce the award from $1.678 million to $807,111 "by subtracting the damages related to the purported losses of [Aurum] because those damages were expressly limited by the Amended and Restated Operating Agreement to the amount of [Stern's] direct or indirect ownership of Aurum, which is undisputedly zero."  Stern had not raised this issue at any previous point in the litigation, either as an affirmative defense, in his summary judgment briefing, in the trial management order, or at trial.

¶ 33     In their response, defendants argued, among other things, that Stern had waived the issue by failing to raise it earlier in the litigation.  The district court nonetheless granted Stern's request, explaining that the amended operating agreement cited by Stern "clearly limits [Stern's] liability to an amount equal to his ownership interest in the company.  Since [Stern] never received any ownership interest in the company, his liability for breach of contract is zero."

B.     Standard of Review and Applicable Law

¶ 34     "Ordinarily, waiver is a factual matter determined by the trial court," *Avicanna Inc. v. Mewhinney*, 2019 COA 129, ¶ 24, and we review factual waiver issues for an abuse of discretion, *Shoen v. Shoen*, 2012 COA 207, ¶ 12.  However, when, as here, "the facts bearing on waiver are uncontested and the evidence before the trial court is entirely documentary, waiver becomes a matter of law, and we are not bound by the trial court's findings."  *Avicanna*, ¶ 24.

¶ 35     Waiver is the intentional relinquishment of a known right or privilege.  *Id.* at ¶ 25.  "A party waives a contractual right . . . if the party acts inconsistently with the right and prejudice accrues to the other parties to the contract."  *Id.*  "Waiver may be express, or it

21

may be implied when a party's actions manifest an intent to relinquish a right or privilege." *Venard v. Dep't of Corr.*, 72 P.3d 446, 450 (Colo. App. 2003).

¶ 36     Pursuant to C.R.C.P. 8(c), "a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." Moreover, "[a]ny mitigating circumstances to reduce the amount of damage shall be affirmatively pleaded." *Id.*

### C. Analysis

¶ 37     Defendants argue that, because Stern did not assert that his damages were contractually limited until after the trial was over, he waived his argument that any damages assessed against him related to Aurum's losses could not exceed the value of his ownership interest in the company, which was zero. Thus, according to defendants, it was error for the district court to grant Stern's request to reduce the jury's damages award to defendants for their breach of contract counterclaim.

¶ 38     Under the circumstances, we agree that Stern waived this argument by waiting to raise it until after the trial had concluded. Consistent with C.R.C.P. 8(c)'s directive that "a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or

affirmative defense" and that "[a]ny mitigating circumstances to reduce the amount of damage shall be affirmatively pleaded," Stern should have listed the contract's liability limitation as an affirmative defense at the outset of the case. *Cf. Farmers Ins. Exch. v. Taylor*, 45 P.3d 759, 763 (Colo. App. 2001) ("[P]olicy limits and setoff amounts were affirmative defenses to the insurer's obligation to pay benefits to the insured," and thus within the scope of C.R.C.P. 8(c), "because, if applicable, those limits and setoffs would have considerably reduced the arbitration award."). He did not do so, however, and never moved to amend his answer to include the defense. Thus, he arguably waived the issue even at that early stage of the proceedings. *See Town of Carbondale v. GSS Props., LLC*, 169 P.3d 675, 681 ("If a defense is not raised in the answer or through a successful amendment of the answer, it is waived."); *Soicher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 46, ¶ 21.

¶ 39 Nor did Stern assert his contractual limitations defense at the summary judgment stage, which he might have been able to do if the defendants failed to object. *See Tarco, Inc. v. Conifer Metro. Dist.*, 2013 COA 60, ¶ 17 (noting that a party may raise an affirmative defense for the first time in summary judgment

23

pleadings if (1) the opposing party does not object to the untimely defense, and (2) the opposing party is not prejudiced by the delay in raising it).  And if there was any doubt left about the status of the defense as trial approached, Stern's failure to include the defense in the trial management order — which stated that "[a]ll claims and defenses not listed [are] withdrawn" — put the matter to rest.  *See Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 327 (Colo. App. 2009) (holding that the defendant waived an affirmative defense when it was listed in the answer but not included in the trial management order or raised at trial), *aff'd*, 252 P.3d 1071 (Colo. 2011).  Because defendants objected to Stern's tardy assertion of the defense and argued that they would be prejudiced if the court applied the contractual limitation, the trial court erred by considering it.  *See Tarco*, ¶ 17.

¶ 40    We are not persuaded otherwise by the holding in *Taylor Morrison of Colorado v. Terracon Consultants, Inc.*, 2017 COA 64, which, according to Stern, approved a party's decision to raise the issue of a contractual damage limitation for the first time in post-trial briefing.  In that case, the contractual cap was litigated extensively before trial, *see id.* at ¶ 6, n.2 ("Taylor raised three

24

challenges to the $550,000 cap on liability."); moreover, no party appears to have objected to the issue of the limitation's applicability being resolved after the jury had rendered its verdict. As a result, the *Taylor Morrison* division did not even consider, much less resolve, whether there might be circumstances under which a party could assert a contractual damage limitation for the first time in a post-trial motion.[2]

## V. Attorney Fees and Costs

¶ 41 Finally, defendants argue that the district court erred by denying their motion for attorney fees and costs based on its finding that "both parties prevailed on a portion of their respective claims." Given our disposition of this appeal, we agree that the order bears reexamination. We reverse the order on attorney fees and costs and remand that question to the district court for further consideration.

---

[2] *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.* is also distinguishable because the constitutionality of the statute at issue in that case, which was raised for the first time in a post-trial motion, "was not ripe until the jury returned its verdict and the court imposed [statutory] treble damages at Vista's request, in lieu of punitive damages awarded by the jury." 117 P.3d 60, 74 (Colo. App. 2004).

## VI.  Disposition

¶ 42    We reverse the district court's reduction of defendants' damages for their breach of contract counterclaim.  We also reverse the district court's award of damages to Stern for his constructive fraud claim.  Finally, we reverse the order on attorney fees and costs and remand the case for further proceedings consistent with this opinion.

JUDGE HARRIS and JUDGE PAWAR concur.