LOKEN, Circuit Judge.
Deere & Company (formerly John Deere Co.) and its subsidiary, John Deere Industrial Equipment Company (collectively, “Deere”), appeal a judgment in favor of Deere’s former industrial equipment dealer, Midcon Equipment Company (“Midcon”). The judgment was entered after a jury found that Deere breached the implied covenant of good faith and fair dealing when it refused to *1030 approve Midcon’s proposed assignment of its dealership to a willing buyer, forcing Mid-con’s owners to sell the business to other approved buyers for $1,715,000 less. The dealer contract provided that Midcon could not assign its dealership “without the prior written consent of [Deere].” Because the implied covenant cannot override this express term of the contract, and because there was no proof that Deere failed to exercise “honesty in fact,” we reverse.
I. Factual Background.
Deere manufactures construction and industrial equipment which it sells to independent dealers who sell or lease the equipment to end users. Deere dealers buy and sell parts and used equipment and service customer equipment. Because construction and industrial equipment is expensive, Deere provides its dealers “floor plan” financing — the dealer must take title to a piece of equipment, such as a $100,000 road grader, upon its delivery into inventory, but the dealer does not pay Deere until it sells or leases the equipment, and it pays no interest on this credit transaction for the first nine months after delivery. Given this financial stake in its dealers, Deere screens prospective dealers for financial strength and adequate capitalization.
Midcon was a long time Deere dealer in Sioux Falls, South Dakota, and Sioux City, Iowa. This controversy began in 1990 when Deere discovered that Midcon had sold $370,-000 in equipment “out of trust” by failing to timely pay Deere after the sales. The dealer contract between Deere and Midcon provided that Deere could terminate immediately for cause (defined to include defaults such as selling equipment out of trust), and that either party could terminate without cause upon one hundred twenty days written notice. Deere notified Midcon’s owners, Paul and Cecelia Taylor, that Midcon would be terminated because of these serious defaults. However, in lieu of immediate termination, Deere advised that it would allow Midcon to continue as a dealer in good standing for up to eighteen months while the Taylors attempted to locate a buyer. The contract further provided that it “cannot be assigned by the Dealer without prior written consent of [Deere].”
In the fall of 1991, Midcon entered into an “agreement in principle” to sell nearly all its assets to Interstate Companies of Minnesota, Inc. (“Interstate”). This tentative agreement was subject to a number of contingencies, including Deere’s consent to the assignment of Midcon’s dealer rights to Interstate. Though Deere had approved Interstate’s acquisitions of Deere dealers in Montana and Des Moines, Iowa, in 1987 and 1989, Deere notified Interstate that it would not approve this assignment unless Interstate enhanced its financial strength with additional equity capital. Interstate declined to do so, Deere refused to approve the assignment, and Mid-con’s sale to Interstate fell through. In 1992, with Deere’s approval of the purchasers as successor dealers, the Taylors sold most of Midcon’s Sioux Falls assets to Midwest Machinery, Inc. (“Midwest”), and most of the Sioux City assets to Swaney Equipment Co. (“Swaney”), on substantially less favorable terms than Interstate had previously offered.
II. Procedural History.
Midcon then commenced this action, alleging wrongful cancellation under the South Dakota equipment dealer statute, S.D.C.L. §§ 37-5-3 and 4, and breach of the implied covenant of good faith and fair dealing, when Deere refused to approve the assignment to Interstate. Deere counterclaimed, alleging that Midcon had iraudulently obtained government customer discounts.
The district court summarily dismissed Midcon’s wrongful cancellation claim because the dealership was not cancelled, but it denied Deere summary judgment on the breach of covenant claim. Prior to trial of that claim, the court severed Deere’s fraud counterclaim for separate trial. It also granted Midcon’s motion in limine to preclude evidence regarding Midcon’s sales out of trust and Deere’s intended termination on the ground that this evidence was irrelevant and unfairly prejudicial after dismissal of the wrongful cancellation claim. The court ruled that the sole issue at trial would be whether Deere acted in good faith when it refused to *1031 approve assignment of Midcon’s contract to Interstate.
Although Deere had not told Paul Taylor why it refused to approve the proposed assignment,[1] discovery revealed Deere correspondence conditioning approval on Interstate agreeing to enhance its equity capital. At trial, Midcon’s theory was that this demand was pretextual — in fact, Deere had forced Midcon to sell its businesses to two “key dealers,” Midwest and Swaney, to further Deere’s secret plan to “rationalize” its dealer network by eliminating fifty to one hundred small dealers during the 1990’s. Deere countered that the refusal was in fact based upon its good faith, rational concern over Interstate’s financial ability to expand in this fashion. Midcon responded with evidence that Deere’s equity capital demand was unusual and unreasonable. The jury obviously credited Midcon’s pretext theory.[2]
The jury awarded Midcon $1,715,710 in compensatory damages. The district court awarded $381,240.55 in prejudgment interest and denied Deere’s alternative motions for judgment as a matter of law or a new trial. On appeal, Deere argues (1) it is entitled to judgment as a matter of law on Midcon’s implied covenant claim; (2) the district court erred in excluding evidence of Midcon’s sales out of trust and government discount fraud, and Interstate’s subsequent financial woes; (3) error in the jury instruction on “good faith”; and (4) improper damages. In its conditional cross-appeal, Midcon argues that we should reinstate the claim for wrongful cancellation if we reverse the judgment for breach of the implied covenant. Given our interpretation of controlling South Dakota law,[3] we need only address the first and last issues.
III. The Implied Covenant Claim.
The district court concluded that “the South Dakota Supreme Court would impose on [Deere] a duty to act reasonably in deciding whether to consent to a proposed dealership transfer.” We review the court’s construction of state law de novo. See Pate v. National Fund Raising Consultants, Inc., 20 F.3d 341 (8th Cir.1994). Application of the implied covenant is a matter of contract interpretation, Cambee’s Furniture, Inc. v. Doughboy Rec., Inc., 825 F.2d 167, 175 (8th Cir.1987) (applying South Dakota law), a question we also review de novo. Dirks v. Sioux Valley Empire Elec. Ass’n, Inc., 450 N.W.2d 426, 427-28 (S.D.1990).
A.
The Supreme Court of South Dakota recently held that South Dakota law implies a covenant of good faith and fair dealing into every contract. See Garrett v. BankWest, Inc., 459 N.W.2d 833, 841 & n. 7 (S.D.1990). This covenant affords only contract remedies; there is no independent tort for its breach. Moreover, “good faith is not a limitless duty or obligation. The implied obligation must arise from the language used *1032 [in the contract] or it must be indispensable to effectuate the intention of the parties.” Id. at 841-42 (quotation omitted). The Court in Garrett adopted for all contracts the definition of “good faith” found in South Dakota’s uniform commercial code — “honesty in fact in the conduct or transaction concerned.” S.D.C.L. § 57A-1-201(19).
Though every contract includes the implied covenant, it does not affect every contract term. The covenant is “a method to fill gaps” in a contract. It has “nothing to do with the enforcement of terms actually negotiated” and therefore cannot “block use of terms that actually appear in the contract.” Continental Bank, N.A. v. Everett, 964 F.2d 701, 705 (7th Cir.), cert. denied, 506 U.S. 1035, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992). Where parties have addressed an issue in the contract, “no occasion to divine their intent or supply implied terms arises.” Cambee’s, 825 F.2d at 175 n. 13.
In Garrett, the Court declined to apply the implied covenant to compel a lender to extend credit when the contract’s express terms did not require such action. 459 N.W.2d at 847. Similarly, that Court has refused to “transplant[ ] the covenant of good faith and fair dealing into the foreign soil of the employment-at-will doctrine.” Breen v. Dakota Gear & Joint Co., 433 N.W.2d 221, 224 (S.D.1988). A claim that an employee was terminated in bad faith is fundamentally inconsistent with the concept of at-will employment. Therefore, the implied covenant may not be used to restrict the employer’s freedom to terminate. See Poff v. Western Nat’l Mut. Ins. Co., 13 F.3d 1189, 1191 (8th Cir.1994) (applying the same principle in Minnesota law).
Applying similar reasoning, many courts have held that the implied covenant may not be applied to limit a clear contractual provision allowing termination of the contract without cause. See Grand Light & Supply Co., Inc. v. Honeywell, Inc., 771 F.2d 672, 675, 679 (2d Cir.1985); Triangle Min. Co. v. Stauffer Chem. Co., 753 F.2d 734, 739-40 (9th Cir.1985); Cardinal Stone Co. v. Rival Mfg. Co., 669 F.2d 395, 396 (6th Cir.1982); Corenswet, Inc. v. Amana Refrig., Inc., 594 F.2d 129, 138 (5th Cir.), cert. denied, 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979); Blalock Mach. & Equip. Co. v. Iowa Mfg. Co., 576 F.Supp. 774, 776-78 (N.D.Ga.1983). See also General Aviation, Inc. v. Cessna Aircraft Co., 703 F.Supp. 637, 644 (W.D.Mich.1988) (implied covenant may not restrict a party’s right to refuse to renew an annual dealer agreement), rev’d in part on other grounds, 915 F.2d 1038 (6th Cir.1990). The Deere-Midcon dealer contract was terminable by either party without cause. This suggests that Deere’s right to disapprove an assignment of the contract was intended to be absolute, because Deere in any event would be free to terminate an unwanted successor without cause.[4]
This appeal involves a no-assignment-without-approval clause, rather than a termination clause. However, courts have also been reluctant to apply the implied covenant to block a party’s exercise of its contractual right to withhold approval. In James v. Whirlpool Corp., 806 F.Supp. 835, 839 (E.D.Mo.1992), for example, the contract provided that “[n]one of the rights or obligations under th[e] agreement shall be subject to assignment ... without the prior written consent of [the manufacturer].” The court held that the implied covenant did not “override the express terms of the agreement” which “unmistakably” granted an unlimited right to disapprove assignments. Id. at 843-44. See also In re Bellanca Aircraft Corp., 850 F.2d 1275, 1285 (8th Cir.1988) (U.C.C. good faith obligation imposes no duty not to unreasonably withhold consent to assign a contract right).
Similarly, in Hubbard Chevrolet Co. v. General Motors Corp., 873 F.2d 873, 877-78 (5th Cir.), cert. denied, 493 U.S. 978, 110 S.Ct. 506, 107 L.Ed.2d 508 (1989), the court held that the implied covenant had “no role *1033 to play” in a dispute over the manufacturer’s refusal to approve a dealer’s relocation. “[The contract] gave GM the authority to approve or disapprove relocation for its own reasons,” the court explained; “we decline to allow a jury to reevaluate the wisdom of the parties’ choice to leave relocation decisions to GM.” Id. at 878. See also Tidmore Oil Co. v. BP Oil Co., 932 F.2d 1384, 1391 (11th Cir.) (no breach of the implied covenant where supplier refused to approve a jobber’s expansion under a contract stating that the supplier “must approve each outlet”), cert. denied, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).
Were the Supreme Court of South Dakota to apply the holdings in these cases to this fact setting, it is clear that Midcon’s implied covenant claim would fail as a matter of law. The purpose of the implied covenant is to honor the parties’ justified expectations. Garrett, 459 N.W.2d at 846. Absent contractual limitation, Deere has an absolute right to choose its equipment dealers. Midcon’s dealer contract granted Deere an express, unrestricted right to disapprove a proposed assignment of Midcon’s contract rights.[5] This contract term gave Mideon no justified expectation that Deere was agreeing to surrender its absolute right to choose Midcon’s successor. Instead, the no-assignment-without-Deere-approval term preserved that right.[6] Cf. Massey v. Tandy Corp., 987 F.2d 1307, 1309-10 (8th Cir.1993); Abbott v. Amoco Oil Co., 249 Ill.App.3d 774, 189 Ill.Dec. 88, 619 N.E.2d 789, 796 (“the dealers cannot complain when Amoco merely exercises the discretion the dealers allowed Amoco to possess”), appeal denied, 153 Ill.2d 557, 191 Ill.Dec. 616, 624 N.E.2d 804 (1993).
B.
There is another line of cases that suggest some role, albeit a limited role, for the implied covenant in a dispute involving exercise of a contractual right to disapprove assignment of a dealer contract. In Kham & Nate’s Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1357 (7th Cir.1990), the court explained: “ ‘Good faith’ is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of [the contract’s] drafting, and which therefore was not resolved explicitly by the parties.” The Seventh Circuit further explained this concept in Original Great Amer. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd., 970 F.2d 273, 280 (7th Cir.1992):
Contract law imposes a duty, not to “be reasonable,” but to avoid taking advantage of gaps in a contract in order to exploit the vulnerabilities that arise when contractual performance is sequential rather than simultaneous. Suppose A hires B to paint his portrait to his satisfaction, and B paints it and A in fact is satisfied but says he is not in the hope of chivvying down the agreed-upon price_ This ... would be bad faith, not because any provision of the contract was unreasonable and had to be reformed but because a provision had been invoked dishonestly to achieve a purpose contrary to that for which the contract had been made. The same would be true here, we may assume, if ... the Cookie Company had tried to appropriate the value [the Sigels] had created by canceling the franchise on a pretext ... utterly trivial violations of the contract that the company would have overlooked but for its desire to take advantage of the Sigels’ vulnerable position. (Citations omitted.)
Under this interpretation of the implied covenant, Deere would be liable if it dishonestly withheld approval of a proposed assignment, but not if its decision was simply unreason *1034 able. This interpretation is consistent with Garrett’s adoption of the U.C.C. standard, “honesty in fact.” It is inconsistent with the district court’s imposition of a duty to act “reasonably.”[7]
We are frankly uncertain whether the Supreme Court of South Dakota would hold that the implied covenant may not restrict an unlimited contractual right of approval, following cases such as Grand Light & Supply and James v. Whirlpool, or whether it would follow the above-quoted Seventh Circuit decisions and hold that the implied covenant does bar dishonest exercise of an otherwise absolute right to disapprove. But we need not resolve that uncertainty in this case because Midcon presented no evidence that Deere acted dishonestly when it disapproved the proposed assignment to Interstate.
Midcon’s case was built upon pretext and unreasonableness. Deere’s stated reason for disapproving — Interstate’s inadequate equity capital — and the alleged secret reason — a long term plan to consolidate dealerships in the hands of key dealers — -are both legitimate business reasons for not approving Interstate as Midcon’s successor. Midcon had no evidence of Deere’s “dishonesty in fact”— an intent to take “opportunistic advantage” of Midcon’s need to sell for any reason other than Deere’s business interests in choosing its dealers, interests expressly protected in the contract. Thus, Deere is also entitled to judgment as a matter of law under this interpretation of the implied covenant.
C.
The district court relied upon Larese v. Creamland Dairies, Inc., 767 F.2d 716 (10th Cir.1985), for its conclusion that the implied covenant imposed a duty on Deere to act reasonably. In Larese, a franchise agreement prohibited assignment “without the prior written consent of’ Creamland and declared any unapproved transfer “null and without effect.” Id. at 717. Applying Colorado law, the court held that the implied covenant required that the franchisor not unreasonably withhold consent. In a passage quoted approvingly by the district court, the court in Larese opined that “the franchisor must bargain for a provision expressly granting the right to withhold consent unreasonably, to insure that the franchisee is put on notice.” Id. at 718. We disagree.
The normal meaning of the approval clause in the Deere-Midcon agreement is that Deere has an unrestricted right to withhold approval, at least if it acts honestly. As review of any contract drafting treatise will confirm, if the parties to a contract agree that the discretion granted under such an approval clause should be more limited, their draftsman will insert a provision stating that “consent to assignment shall not be unreasonably withheld,” like the contract at issue in Anheuser-Busch, Inc. v. Natural Bev. Distribs., 69 F.3d 337, 345 (9th Cir.1995). See generally R.A. Feldman, Drafting Effective Contracts: A Practitioner’s Guide § 5-J.2[a] (1996 Supp.). Unlike litigation, drafting a contract is a positive exercise among parties contemplating beneficial, harmonious relations. No experienced draftsman would think of inserting a provision to the effect that “this clause permits Party A to act unreasonably.” Thus, we decline to follow Larese because it would impose an unrealistic drafting burden on parties who intend to create an unrestricted approval clause whose exercise will not be supplanted by a jury’s notion of reasonableness.
“[I]n commercial transactions it does not in the end promote justice to seek strained interpretations in aid of those who do not protect themselves.” James Baird Co. v. Gimbel Bros., 64 F.2d 344, 346 (2d Cir.1933) (L. Hand, J.). Paul Taylor was an experienced businessman who had no justified expectation that Midcon’s dealer contract would *1035 permit Mm to second-guess Deere’s choice of Midcon’s successor. Accordingly, Midcon’s claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law under any reasonable application of the implied covenant defined in Garrett.
IV. The Wrongful Cancellation Claim.
Midcon argues that the district court erred in summarily dismissing, without discovery, its claim that Deere cancelled the dealer contract in violation of S.D.C.L. §§ 37-5-3 and 37-5-4. Section 37-5-3 provides that a construction equipment manufacturer may not “unfairly, without due regard to the equities of the dealer and without just provocation ... cancel the franeMse of any dealer.” Section 37-5-4 creates a cause of action for damages resulting from a wrongful cancellation.
Midcon argues that Deere could be found to have constructively cancelled the dealer-sMps in early 1991 when Deere advised that Midcon was $370,000 out of trust and would be terminated if the dealersMps were not sold witMn eighteen months. However, Midcon’s brief acknowledged that it continued to be an active Deere dealer until June 1992 when the businesses were sold to Midwest and Swaney.[8] Indeed, Midcon could take no other position if it wished to pursue its implied covenant claim because termination of the dealersMps would have destroyed Midcon’s power to assign them. The plain language of § 37-5-3 limits its scope to instances of “unfair cancellation.” In these circumstances, the district court properly perceived the factual inconsistency in Mideon’s claims and dismissed a wrongful cancellation claim that was fundamentally at odds with the events at issue.[9]
The judgment of the district court is reversed and the case is remanded with instructions to enter a judgment in favor of defendants dismissing all of Mideon’s claims,

. When pressed by Taylor, Deere representatives told him to ask Interstate why it was not approved. This was an appropriate response since Deere’s communications with Interstate had involved that company’s confidential financial information.

. Early in the trial, Paul Taylor testified: "when Deere had put a certain amount of pressure on me, I decided that I would sell the business." Deere argued that Midcon thereby opened up the issue of its sales out of trust, but the district court adhered to its earlier motion in limine ruling. This ruling left the jury free to infer that Deere "pressured” Taylor as part of its secret plan to eliminate small dealers, not because Midcon had breached its dealer contract. The ruling also precluded Deere from explaining why Taylor did not have the option of refusing to sell the business if he found the Midwest and Swaney purchase offers unattractive. Finally, the ruling foreclosed Deere from putting its own actions in context, which is critical when a party’s "honesty in fact” is at issue. Indeed, the district court even barred Deere from introducing evidence of Interstate's later financial troubles, evidence that would have substantiated the concerns that Deere contended were the reason for its refusal to approve assignment of the Midcon dealerships to Interstate. These evidentiary rulings left Deere to defend a claim of bad faith with one hand tied behind its back. Had we not concluded that Midcon’s breach of covenant claim fails as a matter of law, we would have reversed and remanded for a new trial on this ground.

. Neither party challenges the district court's decision to apply South Dakota law, and we do not examine that issue sua sponte. See Kostelec v. State Farm Fire & Cas. Co., 64 F.3d 1220, 1224 (8th Cir.1995).

. In Cambes's, we held that a distributor contract silent as to duration contained an implied covenant that the distributor would not be terminated without cause "for a period sufficient to allow [the distributor] to recoup its investment.” 825 F.2d at 175. However, the Deere-Midcon agreement was not silent as to duration. Moreover, Midcon had many years as a Deere dealer in which to recoup its initial investment.

. See Cunningham Implement Co. v. Deere & Co., No. C7-95-1148, 1995 WL 697555 (Minn.App., Nov. 28, 1995) (unpublished): "Deere left nothing to implication.... [Denial of approval] was Deere's contract right.”

. The provision is consistent with general contract principles in that it confirms the parties' understanding that Midcon's rights as a Deere dealer fell within the broad class of contract rights that are not assignable without the other party's consent because "they are coupled with liabilities, or ... involve a relationship of personal credit and confidence.” Green v. Camlin, 229 S.C. 129, 92 S.E.2d 125, 127 (1956); see Berliner Foods Corp. v. Pillsbury Co., 633 F.Supp. 557 (D.Md.1986); Jennings v. Foremost Dairies, Inc., 37 Misc.2d 328, 235 N.Y.S.2d 566, 573 (N.Y.Sup.Ct.1962) (dealer contract).

. The district court instructed the jury that the implied covenant required Deere "to act fairly and reasonably,” and that "[s]ubterfuge and evasions violate the obligation of good faith ... even though the actor believes its conduct to be justified.” These instructions erroneously expanded the implied covenant far beyond "honesty in fact.” In particular, the instruction regarding "subterfuge and evasions” has no place in a case of this kind. Deere’s dealer strategies and its evaluation of Interstate's financial statements involved sensitive business information. The court should not have permitted the jury to find Deere guilty of "subterfuge and evasions” because it failed to disclose such information when it disapproved the assignment to Interstate.

. Midcon has no authority for its constructive cancellation theory. It cites Groseth Int'l, Inc. v. Tenneco, Inc., 410 N.W.2d 159 (S.D.1987), but there the dealer’s franchise was in fact cancelled. Unlike the dealer in Groseth, Midcon continued to serve as a Deere dealer after the “constructive cancellation” and was able to sell on-going businesses. See also Zeno Buick-GMC, Inc. v. GMC Truck and Coach, 844 F.Supp. 1340, 1351 (E.D.Ark.1992) (Kansas statute does not apply to constructive franchise terminations), aff'd, 9 F.3d 115, 1993 WL 470707 (8th Cir.1993); Carlock v. Pillsbury Co., 719 F.Supp. 791, 852 (D.Minn.1989) (no “constructive termination” claim under Washington Franchise Investment Protection Act).

. Midcon's reply brief asserts for the first time that Midcon is entitled to pursue a claim that Deere violated S.D.C.L. § 37-5-2 by threatening cancellation. However, this claim was not pleaded in Midcon's complaint nor raised in its notice of cross-appeal.