**In re Jacobo XACUR, Felipe Xacur, Jose Maria Xacur, Alleged Debtors.**

**Bankruptcy Nos. 96–48538–H5–7, 96–48540–H5–7, 96–48541–H5–7.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Aug. 22, 1997.

Alfredo R. Perez, Bracewell & Patterson, Houston, TX, for Jacobo Xacur, debtor.

John Adams Barrett, Fulbright & Jaworski, Houston, TX, for petitioning creditors.

### ORDER

KAREN KENNEDY BROWN, Bankruptcy Judge.

This is an involuntary Chapter 7 bankruptcy filed under 11 U.S.C. § 303 in which the petitioning creditors, seven Mexican banks and one California bank owned by a Mexican parent bank, seek an order for relief against three Mexican citizens, Jacobo Xacur, Jose Maria Xacur, and Felipe Xacur. In addition to jurisdictional issues, the alleged debtors urge that this Court should abstain from this case because of pending litigation in Mexico between the same parties. Alternatively, the Xacurs raise counter-claims alleging usury, seeking to nullify the banks' claims. A hearing was conducted on the involuntary petition and the alleged debtors' motion to dismiss and for abstention. After considering the evidence and law, the Court concludes that it should not abstain and should enter an order for relief as to these three debtors.

### I. Facts

The petitioning creditors are: (1) Banco Nacional de Mexico, S.A., a member of Grupo Financiero Banamex—Accival ("Banamex, S.A."), (2) Bancomer, S.A., Institucion de Banca Multiple Grupo Financiero ("Bancomer, S.A."), (3) Banco Mexicano, S.A., Institucion de Banca Multiple Grupo Financiero Invermexico ("Banco Mexicano, S.A."), (4) Banca Serfin, S.A., Institucion de Banca Multiple Grupo Financiero Serfin ("Banca Serfin, S.A."), (5) Banco Bilbao Vizcaya–Mexico, S.A., Institucion de Banca Multiple Grupo Financiero Banco Bilbao Vizcaya–Probursa, formerly Multibanco Mercantil Probursa, S.A., formerly known as Institucion de Banca Multiple Grupo Financiero Probursa ("Banco Bilbao Vizcaya–Mexico, S .A."), (6) Confia, S.A., Institucion de Banca Multiple Abaco Grupo Financiero ("Confia, S.A."), and (7) Banco Inverlat, S.A., Institucion de Banca Multiple Grupo Financiero Inverlat ("Banco Inverlat, S.A."), and (8) California Commerce Bank, (Petitioners).

From 1992 through 1994, petitioners loaned over $240,000,000 to the Xacur companies known as: (1) Hidrogenadora Yucateca, S.A. de C.V., (2) Oleoproteinas del Sureste, S.A. de C.V., (3) Aceitera del Golfo, S.A. de C.V., (4) Harinas del Sureste, S.A. de C.V., (5) Grupo Xacur, S.A. de C.V., (6) Detergentes y Jabones Sasil, S.A. de C.V., (7) Hidrogenadora Nacional, S.A. de C.V., (8) Licuoenvases, S.A. de C.V., (9) Promotora Hinsa, S.A. de C.V., and (10) Proteinas y Aceites del Bajio, S.A. de C.V. (See Appendix A). All of the promissory notes were to be repaid in American dollars. Many of the promissory notes are secured by the assets of the Xacur companies located in different states of Mexico.

Some of the Xacur companies were founded in 1949 and some in 1953. While two of the Xacur companies are in the soap and plastic container business, most are in the business of grain and cooking oil processing, marketing, and distribution on a retail and wholesale level throughout Mexico. They have plants located in Merida, Guanajuato, Mexicali, and Nuevo Laredo areas of Mexico. Throughout Mexico, the companies employ 2,000 employees directly and another 3,000 employees indirectly by subsidiaries.

In addition to the corporate security given for the notes, each Xacur brother gave his *"aval."* Under Mexican law, an aval is a form of financial obligation similar to that of a comaker or co-obligor under United States law. One gives an aval by endorsing a promissory note known as a "pagare" and one who gives his aval through endorsement of a promissory note is known as an *"avalista ."*

### A. Banamex Loans

September 25, 1995 and September 21, 1995, Banamex, S.A. sued Jacobo Xacur in courts located in Yucatan Merida on his avals in two cases, alleging sums due of $4.9 million and $53 million U.S. dollars. Many of the promissory notes have the interest rate omitted. Other notes at issue recite a specific interest rate. Whether the interest is stated or omitted, many notes require interest plus penalty interest on default. Specifically, the Banamex promissory notes require interest plus penalty interest ("moratoria") on any overdue principal amount payable at a variable rate known as the Libor Rate calculated from the date of default multiplied by 4.[1]

Most of the notes are written in English and Spanish. In addition, many of the Banamex notes at issue have a clause reciting the parties' agreement in English that:

> Any legal action or proceeding arising out of or relating to this Promissory Note may be brought in the Courts of the State of New York, United States of America or of the United States of America suppletory for the State of New York, or of the Federal District, Mexico, at the election of the Holder hereof thereby waiving the jurisdiction of any other Courts.

> This Promissory Note shall be governed by and construed in accordance with the laws of the State of New York, United States of America, provided, however, that if, and only if, any legal action or proceeding is brought by the Holder in respect of this Promissory Note in the Courts of Mexico, this Promissory Note shall be deemed to be an instrument made under the laws of Mexico and shall be governed by, and construed in accordance with the laws of Mexico, and provided further that the obligation of "The Undersigned" to repay this Promissory Note together with accrued interest thereon, and all other amounts payable hereunder shall be dischargeable only by payment in dollars at New York, N.Y., U.S.A.

1. The Libor Rate is defined as the annual rate of interest equal to the arithmetic average of the rate at which deposits of Eurodollars are offered in the London Interbank Market among various

(Alleged Debtors' Ex. 38—Banamex note p. 4)

### B. Bancomer, S.A.

Some of the Bancomer notes have the interest rate left blank; some have a stated rate of interest ranging up to 12.02%. The penalty rate on some notes is 15%. The notes do not state a choice of law or forum.

### C. Banco Mexicano, S.A.

The Banco Mexicano notes have interest rates not exceeding 12.25%. The notes do not state a choice of law or forum.

### D. Banca Serfin, S.A.

The Banca Serfin notes state interest rates not exceeding 10% plus a penalty rate of 50%. The Banca Serfin notes state:

> For everything related to the interpretation of compliance with, or judicial request for, payment of the obligations herein undertaken, the Maker expressly submits to the jurisdiction of the competent courts in the City of Mexico Federal District, United Mexican States, or in the _____ at the election of the holder hereof there by waiving the jurisdiction of any other domicile. In the event of suit to enforce payment of the principal amount hereof and accrued interest, if any, the Borrower agrees to pay such additional sum for expenses and attorney fees as the court may judge reasonable.

### E. Banco Bilbao Vizcaya–Mexico, S.A.

The notes due Banco Bilboa Vizcaya state interest rates not exceeding 9.5% with penalty rates ranging up to 19%.

### F. Confia, S.A.

The Confia notes state rates of interest ranging up to 16% plus a penalty rate of 50%. The Confia notes state:

> The SUBSCRIBER and the GUARANTOR hereby irrevocably submit to the jur-

specified banks as of two business days prior to the issuance date of the Promissory Note as shown on the Reuters Screen Libor Page.

isdiction of any New York State court or any United States court sitting in New York City, New York, United States or any competent court of Mexico City, Mexico or of the city of *MEXICO D.F.*, Mexico, in any action or proceeding arising out of or relating to this PROMISSORY NOTE, as the plaintiff in such action or proceeding may elect and the SUBSCRIBER and the GUARANTOR hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in any of such courts. The SUBSCRIBER and the GUARANTOR irrevocably waive, to the fullest extent permitted by law, any objection which it may now or hereafter have to laying of venue of any suit, action or proceeding with respect to this PROMISSORY NOTE brought in any court aforementioned, and the SUBSCRIBER and the GUARANTOR further irrevocably waive any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient [sic] forum. The SUBSCRIBER and the GUARANTOR hereby expressly waive all rights to any other jurisdiction, wich [sic] they may now or hereafter have any reason of their present or subsequent domiciles.

G.   Banco Inverlat, S.A.

The notes due Inverlat show interest rates ranging up to 9.9%. The notes state:

The Maker and, as the case may be, the guarantor(s) agree that they can be judicially required to pay this PROMISSORY NOTE in the city of Mexico, D.F. Mexico, in the event that the Maker does not liquidate this PROMISSORY NOTE at maturity. The Maker and, as the case may be, the guarantor(s) expressly submit to the courts of Mexico, D.F. Mexico, or of the United States of America for the State of _____ or of the State of _____ or all at the election of the holder of this PROMISSORY NOTE, waiving the jurisdiction of any other domicile which in the future they may have.

H.   California Commerce Bank

The note due California commerce states an interest rate of prime plus 2% and a penalty rate of 6%. This note states:

The undersigned consent(s) and agree(s) that the holder hereof shall be able to bring any suit, action or proceeding with respect to this Promissory Note, at the election of the holder hereof, in the United States of America or in the United Mexican States. For everything related to the interpretation of, compliance with, or judicial request for payment of the obligations herein undertaken, in the United States of America, the undersigned hereby irrevocably and expressly submit(s) at the election of the holder hereof, to the jurisdiction, indistinctly, of (I) the competent courts of the State of California, located in the City of Los Angeles, California, therefore expressly waiving any other jurisdiction they(it) may be entitled to by reason of their(its) present or future domicile. For everything related to the interpretation of, compliance with, or judicial request for payment of the obligations herein undertaken, in the United Mexican States, the undersigned hereby irrevocably and expressly submit(s) to the jurisdiction of the competent courts of the City of Mexico, Federal District, United Mexican States, therefore expressly waiving any other jurisdiction they (it) may be entitled to by reason of their(its) present or future domicile. In the event a suit is brought to enforce payment of this Promissory Note, the undersigned agree(s) *Divided by .951, initial rate of 11.57% per annum to pay all expenses and attorney fees incurred by the Bank in such suit. . . .

This Promissory Note shall be governed by, and construed in accordance with, the laws of the State of California, United States of America; *provided, however,* that if, and only if, any legal action or proceeding (other than an action to enforce a judgment obtained outside the United Mexican States) is brought by the holder hereof in the courts of the United Mexican States or any political subdivision thereof, this Promissory Note, for such purpose only, shall be governed by, and construed in accordance with, the laws applicable in the City of Mexico, Federal District, United Mexican States.

Most of the loans were made to fund the operation of the Xacur companies, including funding grain shipments from the United States to Mexico. Additionally, the Xacur brothers borrowed substantial sums from the banks to fund the construction of a major soybean oil preparation and extraction plant to be built in Merida. The Xacur brothers allege that once built, the processing plant system was defective and for that reason they were unable to repay these specific loans. This soybean plant is the subject of pending litigation in Case No. C–3–93–278 in the United States District Court for the Southern District of Ohio (Western Division) between Oleoproteinas Del Sureste, S.A., et. al (the Xacur companies) and The French Oil Mill Machinery Co., an Ohio corporation, et. al (the plant manufacturer).

From 1990 to September 1994, the Xacurs paid over $28 million American dollars on the notes. Thereafter, in October 1994, there was a default on some of the Banamex loans. In addition, the Mexican government devalued the peso from 3.1070 in 1993 to 4.9400 in December 1994, increasing the total principal owed on the debt by approximately 53% in one stroke. The Xacurs and their companies made no further payments on these notes. However, several of the banks have set off a total of 148,000,000.00 pesos of the Xacurs' personal and corporate funds as involuntary credits against the debts. The Xacurs contend that these set offs violated Mexican law.

Between February 1995 and 1996, the banks filed at least 27 lawsuits against the Xacur companies and against the Xacur brothers, individually, to collect on the notes and the avals. See Appendix B. These suits were filed in various civil courts in different regions of Mexico. No judgments have been obtained to date.

■ On June 28, 1995, ten Xacur companies filed what is known as a "suspension de pagos" or Suspension of Payments (SOP). This is a form of reorganization proceeding under Mexican law which allows the entity filing the SOP to join pending related litigation in the SOP court. On July 3, 1995, the ten Xacur companies were authorized to go forward in one SOP proceeding by the Mexican judge. Some of the banks appealed this ruling seeking to have the case converted to a liquidation proceeding. To date, these appeals have been unsuccessful and/or the banks have agreed to an abatement of the appeal in order to negotiate with the Xacurs.

The SOP proceeding is ongoing in Mexico.[2] Only one of the pending civil cases brought by the banks on the avals against the Xacurs individually have been "accumulated" to the SOP; that is, it has been joined for consideration by the SOP judge. The Xacur companies seek to have all cases joined in the SOP proceeding. The banks have resisted that joinder. The parties dispute whether such joinder is required under Mexican law. Nevertheless, all banks have filed claims in the SOP proceeding against the Xacur companies arising from the notes. To date, all other civil cases against the Xacur brothers individually, alleging default on their avals remain pending before the various civil courts of Mexico.

In response to each action taken by the banks in the Mexican civil proceedings, the Xacurs have employed counsel and disputed each legal action before the Mexican courts. The Xacur companies continue to operate in Mexico.

The Xacurs contend that they moved their residences from Mexico after the banks made attempts to proceed criminally against them for causes of action derived from the nonpayment of these notes. There are no criminal proceedings pending against them in Mexico at present. The banks claim that the Xacurs' change in residence has impaired the banks' abilities to litigate their cases against the Xacurs individually in Mexico.

The banks continued to negotiate with the Xacurs in 1995 and 1996. On September 18,

**2.** At one point criminal charges were brought against the judge who granted the SOP, Jacobo Xacur, and counsel for Jacobo Xacur, but on appeal these cases were dismissed. It appears that the irregularities on which the indictment were brought included improper joinder of all the bankruptcy cases and non-listed assets and liabilities. These criminal proceedings are now dismissed and there are no pending criminal proceedings against the Xacurs or the Xacur companies.

1996, the banks filed this involuntary petition against the Xacur brothers.[3]

## II. Issues Presented

Petitioners claim that: (1) each of the alleged debtors is indebted to three or more of the petitioners for an amount aggregating in excess of $10,000.00; (2) this debt is liquidated and non-contingent, and is not subject to a bona fide dispute; (3) the alleged debtors are not paying their debts as they become due; (4) the alleged debtors are qualified debtors under the Bankruptcy Code; (5) this Court has jurisdiction to preside over a bankruptcy case brought against each of the alleged debtors; and (6) this Court should not abstain from hearing these cases.

Alleged debtors Jacobo Xacur, Jose Maria Xacur, and Felipe Xacur claim that the Court should abstain from hearing this case on the grounds that: (1) abstention would be in the best interest of the petitioners and the alleged debtors, (2) abstention would prevent the continuation of a disruptive involuntary bankruptcy case, (3) the traditional 5-part test for abstention from involuntary bankruptcy proceedings is satisfied by the facts of this case, and (4) abstention would be in the interest of international comity.

In addition, alleged debtors urge that at least as to some banks, the promissory notes include forum selection clauses that should bar the bringing of this involuntary in the Southern District of Texas. The Court finds, however, that while Banamex loans may arguably raise an issue of forum selection, nothing in their promissory notes prevents the remaining banks from initiating these involuntary cases in the Southern District of Texas.

More importantly, the alleged debtors urge that petitioners have subjected themselves to Texas usury law by filing this bankruptcy petition in the Southern District of Texas. Alleged debtors contend that as a matter of public policy, this Court should not grant an order of relief to enforce the notes at issue because many of the notes are usurious on their face, violating the public policy and laws of the state of Texas. If the Court enters an order for relief, the alleged debtors assert counterclaims of usury under Texas law in order to nullify the banks' claims.

In addition, alleged debtor Jacobo Xacur moves for dismissal under Fed.Rules Civ. Proc.Rule 12(b)(2), urging that this Court cannot exercise personal jurisdiction over him because he is a Mexican national, is not domiciled in Texas, and has insufficient contacts with Texas to confer such jurisdiction.[4]

## III. Jurisdiction

Does this Court have jurisdiction over Jacobo Xacur?[5] The banks assert that while they have met the minimum contacts test, they need not do so if the debtor meets the requirements of 11 U.S.C. § 109 which provides: "(a) Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, ... may be a debtor under this title."

■ A foreign debtor may file a voluntary bankruptcy petition in the United States under 11 U.S.C. § 301 so long as the debtor is a person, not an excepted entity. Similarly, an involuntary case may be filed against a foreign person who qualifies under Section 109. *In re Axona International Credit & Commerce,* 88 B.R. 597, 606 (Bankr.S.D.N.Y. 1988).

■ Jacobo Xacur is a Mexican national who asserts that there is no showing of minimum contacts between himself and the United States. Nevertheless, petitioning creditors urge that Jacobo left Mexico in 1995 and has lived in the United States in either Miami or Houston ever since. The Court finds that El Khoura Corp., a company of which Jacobo Xacur is president and shareholder,

---

**3.** The case of Nicholas Xacur, case no. 96–48539–H5–7, has not been jointly administered with the cases of the other Xacurs.

**4.** Jacobo Xacur previously asserted that he had never been served with the involuntary petition. However, he now waives that issue.

**5.** Jose Maria and Felipe Xacur do not contest personal jurisdiction.

owns a condominium in Houston[6] from which many telephone calls are made to the Xacur businesses in Mexico. Additionally, the property appears to be a residence at which Jacobo Xacur receives mail and Jacobo Xacur's son attended school in Houston from 1995 to 1996. This Court concludes that Jacobo Xacur is conducting business from his condominium in Houston.

Jacobo Xacur refused to appear for his deposition and did not testify before this Court. The Court finds that Jacobo Xacur resides in Houston and owns property here. The Court finds that he is eligible to be a debtor under Section 109. Flics and Ireland, Bankruptcy and the Problems of Multi–Jurisdictional Workouts, 553 PLI/Comm 175, 195 (1990).

In addition to the property requirement of § 109, the Court finds that minimum contacts have been established. "When a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1258 (5th Cir.1994). The Court finds that the minimum contacts test is satisfied in view of evidence of Jacobo Xacur's residence and property ownership in Houston. Traditional notions of fair play and substantial justice are not offended by this Court's exercise of jurisdiction over alleged debtor, Jacobo Xacur, and due process is met.

### IV. Section 303 Requirements

■ To prove an involuntary case, plaintiffs must show by a preponderance of the evidence that there are three or more creditors holding claims that are "not contingent as to liability or the subject of a bona fide dispute ..." 11 U.S.C. § 303(b)(1). If the involuntary petition is contested as here, then following a hearing, the Court shall enter the order for relief on a finding that the debtor is not paying its debts as they come due unless the debts are the subject of a bona fide dispute. 11 U.S.C. § 303(h). Regarding the requirements of Section 303(b) and (h), the Xacurs challenge only whether the avals are contingent debts under Mexican law and whether there exists a bona fide dispute arising from their usury defense.

■ This Court finds under Mexican law, the banks may proceed against the Xacurs individually on their avals without joining their cases in the SOP. See Article 1097 of the Mexican Commercial Code. This Court credits the testimony of Petitioning Creditors' expert witness, Lic. Sanchez–Mejorada–Velasco that under Mexican law, these petitioning banks are not required to wait for the resolution of their claims or cases against the corporate obligors on the notes prior to enforcing the avals against the avalistas.

### V. Usury

■ The Xacurs contend that the debts to the petitioning creditors are the subject of a bona fide dispute alleging that the notes at issue are usurious. The Court finds that while some of the loans of Banamex and other banks might exceed the permissible rate of interest under Texas law,[7] the notes are not usurious under Mexican law and sufficient notes are not usurious under Texas law to satisfy the requirements of section 303. In particular, the Court concludes that where the interest rate of the note is blank, Mexican law provides statutory rate of 6% and no *moratoria* rate could be collected. Under Texas law, the omitted rate is by statute the judgment rate of 6% with regards to the promissory notes at issue here. Tex. Rev.Stat.Ann. art. 5069–1.03; Tex.Bus. & Comm.Code § 3.112. Even excluding any arguably usurious debts, the Court finds that the debts owed to the petitioning creditors satisfy the requirements of 11 U.S.C. § 303.

---

6. Jacobo Xacur's ownership interest in the condominium was assigned to El Khoura Corp. The purchase money loans on the condominium were borrowed by Jacobo Xacur. Jacobo Xacur is listed as owner with the home owners association.

7. Because there was no proof by the parties of the exact Libor rate on any one date, there is no specific determination of this issue.

## VI. Abstention

The Xacurs argue that 11 U.S.C. § 305 requires abstention. 11 U.S.C. § 305 provides:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of the creditors and the debtor would be better served by such dismissal or suspension; or

(2)(A) there is pending a foreign proceeding; and

(B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.

11 U.S.C. § 304(c) provides:

(c) In determining whether to grant relief under subsection

(b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with—

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claims holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title [11 U.S.C. ss 101 et seq.];

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

The Court is not persuaded that the interests of the creditors and alleged debtors would be better served by dismissal or abstention. Although advantages might accrue to the alleged debtors should this Court abstain, the test under 11 U.S.C. § 305(a)(1) is not a balancing test. This Court must find that the interests of the creditors would be better served by abstention and this has not been shown. *See In re Eastman*, 188 B.R.

621, 624 (9th Cir. BAP 1995) ("The courts that have construed § 305(a)(1) are in general agreement that abstention in a properly filed bankruptcy case is an extraordinary remedy, and that dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that both 'creditors and the debtor' would be 'better served' by dismissal.") By transferring their residences from Mexico, the Xacurs have stymied any further activity in the individual civil proceedings against the Xacurs pending in Mexico on the avals.

The petitioning creditors urge that abstention is inappropriate under section 305(a)(2)(a) because there is no foreign proceeding pending against these alleged debtors. They contend that this Court cannot and/or should not abstain in favor of the numerous individual civil proceedings pending in Mexico.

A foreign proceeding under the Bankruptcy Code is a "proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization." 11 U.S.C. § 101(23). The suspension of payments currently pending in Mexico for the Xacur companies may qualify as a foreign proceeding for the Xacur companies but not for these alleged individual debtors. That proceeding will not effect a reorganization or liquidation of the assets and debts of these alleged debtors. Since there is no foreign proceeding to which to defer under 11 U.S.C. § 305, the factors under 11 U.S.C. § 304 are irrelevant.

Even if the suspension of payments proceeding for the Xacur companies qualifies as a foreign proceeding for these alleged debtors, the Court finds that an economical and expeditious administration of the alleged debtors' estates will not be enhanced by deference to that foreign proceeding. The only statutory factor raised by the alleged debtors in support of abstention under section 304(c) is comity. The Court finds that the interests

of comity do not support abstention in this case. "International comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction." *In re Maxwell Communication Corp.*, 93 F.3d 1036, 1049 (2nd Cir.1996). No conflict has been shown in the instant matter.[8] There is no inconsistency in maintaining both individual and corporate bankruptcy proceedings for the Xacurs and their companies. No Mexican court has enjoined bankruptcy or collection proceedings against these alleged debtors. The litigation currently pending against these alleged debtors in Mexico is not in the nature of reorganization or liquidation proceedings.

Based on the foregoing, the Court finds that abstention is not appropriate in these involuntary proceedings. The Court finds that the alleged debtors may be debtors under 11 U.S.C. § 109. The Court finds that petitioning creditors have met their burden of proof under 11 U.S.C. § 303. A separate order for relief shall be entered.

---

**8.** Alleged debtors urge that Articles 605 and 606 of the Federal District Civil Code of Mexico indicate that Mexican courts could not recognize final decisions of this Court due to the pending