KINGVISION PAY–PER–VIEW, LTD., Plaintiff,

v.

JASPER GROCERY and Jose A. Cordero, Defendants.

No. 99Civ10078(VM)(JCF).

United States District Court, S.D. New York.

July 13, 2001.

Wayne Lonstein, Lonstein Law Office PC, Ellenville, NY, for plaintiff.

James E. Young, Hackensack, NJ, for defendant.

## MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

The plaintiff, Kingvision Pay–Per–View, Ltd. ("Kingvision"), brings this action

against Jasper Grocery and Jose A. Cordero, the store's owner, pursuant to the Cable Communications Policy Act of 1984 (the "Cable Act"), 47 U.S.C. § 151 *et seq.*, for the unauthorized interception and commercial exhibition of closed-circuit television programming. Kingvision seeks statutory damages under both Section 553 and Section 605 of the Cable Act, as well as an award of reasonable costs, including attorneys' fees, pursuant to 47 U.S.C. § 605(e)(B)(iii). The parties stipulated to refer this case to me for all purposes including final disposition under 28 U.S.C. § 636(c). They also agreed to submit the case for trial on the papers. Accordingly, this decision constitutes my findings of fact and conclusions of law consistent with Rule 52(a) of the Federal Rules of Civil Procedure.

*Background*

On March 7, 1998, Julio Cesar Chavez and Miguel Angel Gonzalez were contestants in a professional prizefight in Mexico City, Mexico (the "fight"). (Complaint, attached as Exh. A to Plaintiff's Submission of Record for Trial ("Rec."), ¶ 7). Kingvision owned the exclusive right to exhibit the closed-circuit telecast of this fight as well as the undercard bouts. (Rec., Exh. A ¶¶ 7, 15). It sublicensed these rights to a variety of business locations throughout New York, such as theaters, bars, clubs, and restaurants. (Rec., Exh. A ¶¶ 7, 10).

In order to ensure limited access to the programming, the plaintiff encoded its transmission of the event. (Rec., Exh. A ¶ 11). The telecast was transmitted by radio signal to a satellite and from there to receivers operated by cable systems. The cable operators decoded the signal, applied their own encryption, and transmitted the telecast by coaxial cable to their customers. Each customer with the appropriate decoder could then watch the fight upon payment of a fee. *See generally Interna-*

*tional Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1000 (2d Cir.1993) ("Cablevision I") (describing technology of cable television).

According to the plaintiff, Mr. Cordero was able to exhibit the fight at Jasper Grocery, located at 694 East 141th Street in the Bronx, New York, without paying the fee. (Rec., Exh. A ¶¶ 12, 14). Patrick McLoughlin, an investigator hired by Kingvision, observed approximately 30 customers who were gathered around a television set inside the grocery store at the time the undercard fight was in progress. (Affidavit of Patrick McLoughlin ("McLoughlin Aff."), attached as Exh. C to Rec.). Kingvision filed this action when it was informed of the unlawful conduct.

*Discussion*

A. *Liability*

■ Section 605 of the Cable Act states in pertinent part: "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). This section applies to transmission of a television signal by radio, whether or not the signal is subsequently carried by coaxial cable. *See International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 132 (2d Cir.1996) ("Cablevision II").

■ In this case, the defendants' conduct included unauthorized interception of radio signals. While Kingvision does not provide much detail on the technology used in transmitting the telecast, it does allege that reception would not have been possible without "electronic decoding equipment and satellite coordinates necessary to receive the signal." (Rec., Exh. A ¶ 13). The reference to satellites indicates that the broadcast originated with a radio transmission, so that the defendants' unau-

thorized use indeed violated Section 605 of the Cable Act.[1]

While Section 605 deals with interception of radio signals, Section 553 of the Cable Act is concerned with unlawful interception of cable communications. It states in part that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

Here, the broadcast was received as a radio transmission by the licensed cable operator and then retransmitted through the cable system to subscribers. Accordingly, the defendants' interception of the fight also ran afoul of Section 503.

The defendants contend that they did not engage in illegal conduct. Instead, they assert that Denise Scott, a residential cable subscriber who lives next door to the grocery, was responsible for illegally exhibiting the fight. (Plaintiff's Interrogatories to Defendants ("Pl.Interrogatories"), attached as Exh. D to Rec., ¶ 23; Answer to Interrogatories, attached as Exh. E to Rec., ¶ 23). According to the defendants, Ms. Scott paid for the fight herself and then brought a television set out of her apartment and put it on the top of the ice machine located in front of the grocery. (Pl. Interrogatories ¶ 23; Answer to Inter-

rogatories ¶ 23; Defendants Arguments ("Def.Arguments") at 1–2). Yet, they do not present any evidence to substantiate this claim. While the defendants argue that the investigator observed people gathered outside the store (Def. Arguments at 1), Mr. McLoughlin states in his affidavit that he saw the customers viewing the fight inside Jasper Grocery.[2] (McLoughlin Aff.). I credit Mr. McLoughlin's sworn statement.

### B. *Damages*

██ Both Section 553 and Section 605 of the Cable Act allow a plaintiff to choose between actual and statutory damages. 47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C)(i). Statutory damages range from $1,000 to $10,000 for ordinary violations of Section 605, 47 U.S.C. § 605(e)(3)(C)(i)(II), but may be enhanced up to $100,000 for willful violations of this section or reduced to $250 for "innocent" ones. 47 U.S.C. §§ 605(e)(3)(C)(ii)-(iii). Section 553 allows recovery in the range of $250 to $10,000 for ordinary violations, 47 U.S.C. § 553(c)(3)(A)(ii), but a court can increase the award to $50,000 for willful violations or decrease it to $100 for unwitting transgressions. 47 U.S.C. §§ 553(c)(3)(B)-(C).

Kingvision seeks an award of statutory damages pursuant to both sections, but can recover only under one of the two. *See Time Warner Cable of New York City*

---

1. In addition, courts in this district have regularly recognized that the telecasts licensed by the plaintiff are covered by the provisions of Section 605. *See, e.g., Kingvision Pay–Per–View, Ltd. v. New Paradise Restaurant*, No. 99 Civ. 10020, 2000 WL 378053, at *2 (S.D.N.Y. April 11, 2000) (awarding statutory damages under Section 605); *KingVision Pay–Per–View, Ltd. Corp. v. Las Cazuelas Mexican Restaurant*, 99 Civ. 10041, 2000 WL 264004, at *3 (S.D.N.Y. March 9, 2000) (same).

2. In the appendix to his affidavit, the investigator does say that the television set was

located "on top of ice machine *at front* of the store." (McLoughlin Aff.). The defendants, however, have not presented any substantial evidence that the fight was broadcast from an ice machine *in front* of Jasper Grocery. At one point in their brief argument in response to the plaintiff's trial submissions, they simply refer, without more, to an alleged conversation with Mr. McLoughlin in which he purportedly admitted that the people were watching the fight on the sidewalk. (Def. Arguments at 2–3).

*v. Barbosa,* 98 Civ. 3522, 2001 WL 118608, at *5 (S.D.N.Y. Jan. 2, 2001); *Cablevision Systems Corp. v. Maxie's North Shore Deli Corp.,* No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991). In similar cases, some courts have tried to arrive at damage awards by estimating the profits obtained by the defendant or the amount of licensing fee that the plaintiff was deprived of. *See e.g., Time Warner Cable of New York City v. Googies Luncheonette, Inc.,* 77 F.Supp.2d 485, 490 (S.D.N.Y.1999) (awarding $50 per patron); *Time Warner Cable of New York v. Taco Rapido,* 988 F.Supp. 107, 111 (E.D.N.Y. 1997) (same); *Cablevision Systems Corp. v. 45 Midland Enterprises, Inc.,* 858 F.Supp. 42, 45 (S.D.N.Y.1994) (same). Other courts have awarded a flat sum for each violation. *See e.g., New Paradise Restaurant,* 2000 WL 378053, at *2 (awarding total of $20,000); *Las Cazuelas Mexican Restaurant,* 2000 WL 264004, at *3 ($12,500); *Maxie's North Shore Deli,* 1991 WL 58350, at *2 ($30,000).

■ While there needs to be some proportionality between the loss suffered and the amount of statutory damages, the calculation should be generous enough to ensure that the plaintiff is fully compensated. In this case, it would not be fair to Kingvision to limit the award on the basis of the defendants' decision not to impose a cover charge, since Jasper Grocery likely profited from the purchase of food made by each customer attracted to the store by the prospect of watching the fight. Nor would it be sufficient merely to award the equivalent of a licensing fee, which would be equal to $15.00 times the capacity of the store. (Kingvision's License Agreement, attached to Letter of Wayne D. Lowenstein dated July 2, 2001). There is usually no information on the capacity of a grocery store, as opposed to the capacity of a restaurant. And, in any event, a damage award based exclusively on licensing fees would undercompensate the plaintiff because the availability of unauthorized access to the program reduces demand and depresses the prices that Kingvision can charge for sublicenses. *See Cablevision Systems New York City Corp. v. Faschitti,* No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D .N.Y. Feb. 7, 1996).

A principal award of $5,000 against the defendants is warranted here. This figure is well in excess of the probable licensing fee and it is more than the store would have made in profits on a per-customer basis. On the other hand, it represents a recognition that maximum statutory damages should be reserved for cases where there is evidence of more substantial injury to the plaintiff or profit by the defendants.

■ Kingvision is entitled to a further enhancement because the violation was willful and done with the purpose of profiting commercially. *See* 47 U.S.C. § 605(e)(3)(C)(ii). In order to access the telecast, it would have been necessary to use an unauthorized decoder, to illegally divert cable service into the store, or improperly relocate an authorized decoder (in this case, possibly the one belonging to Ms. Scott). In any of these scenarios, the illegality of the action would have been apparent to the perpetrator. And there can be little doubt that the defendants were motivated by profit in showing the fight. While Jasper Grocery apparently did not advertise the event, *cf. Home Box Office v. Carlim, Inc.,* 838 F.Supp. 432, 435 (E.D.Mo.1993) (lack of advertising a factor in finding willfulness), it clearly used the fight to draw potential customers who would then spend money inside the store. Under these circumstances, enhanced damages of an additional $10,000 are appropriate. The court made similar award in *Home Box Office v. Champs of New*

*Haven, Inc.,* 837 F.Supp. 480, 484 (D.Conn. 1993). Judge Cabranes' comments in that case rejecting a more substantial award are equally applicable here: "[t]here are no allegations of repeated violations over an extended period of time, of substantial unlawful monetary gains by the defendants, or, conversely, of any significant actual damages to the plaintiff." *Id.; see also Barbosa,* 2001 WL 118608, at \*5 (duration of violation as factor in enhancement); *Las Cazuelas Mexican Restaurant,* 2000 WL 264004, at \*3 (quoting with approval *Champs of New Haven* ). In fact, the total amount of damages awarded in the instant case, namely $15,000, falls squarely within the range of awards given by the courts in this district to the same plaintiff for violations involving the very same fight between Mr. Chavez and Mr. Gonzalez under circumstances similar to the instant case. *See id.* (awarding $12,500 in total damages); *New Paradise Restaurant,* 2000 WL 378053, at \*2 ($20,-000 in total damages).

C. *Attorneys' Fees and Costs*

 An award of costs, including attorneys' fees, is mandatory under section 605. 47 U.S.C. § 605(e)(3)(B)(iii); *see also Cablevision I,* 997 F.2d at 1009. In this case, however, plaintiff's counsel has not sufficiently documented the requested fees. In *New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983), the Second Circuit held that "any attorney ... who applies for court-ordered compensation in this Circuit ... must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *Id.* at 1148. Failure to support a fee application with contemporaneous records generally results in denial of any award. *See Riordan v. Nationwide Mutual Fire Insurance Co.,* 977 F.2d 47,

53 (2d Cir.1992). Counsel's failure to offer more than the most general estimate of time expended in this case therefore precludes any award of fees. (Affidavit In Support of Attorneys Fees).

An award of costs, however, is warranted in this case because the plaintiff's attorney has submitted sufficiently detailed information about how the expenses were incurred. Accordingly, the plaintiff shall be reimbursed $150 for the filing fee and $60 for service, for a total of $210.00.

*Conclusion*

For the reasons set forth above, the Clerk of Court shall enter judgement in favor of Kingvision and against Jasper Grocery and Jose A. Crodero, jointly and severally, in the sum of $15,210.00 and shall close this case.

SO ORDERED.