**KINGVISION PAY–PER–VIEW, LTD., Plaintiff,**

v.

**Elvira GUTIERREZ and Francisca Diaz, individually and d/b/a Angel's Taquerias d/b/a 3 Hermanos Restaurant, Defendants.**

Civil Action No. 07–cv–00979–RPM–MEH.

United States District Court, D. Colorado.

Feb. 12, 2008.

Douglas D. Koktavy, Douglas D. Koktavy PC, Denver, CO, for Plaintiff.

## RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT

MICHAEL E. HEGARTY, United States Magistrate Judge.

Before the Court is Plaintiff's Motion for Default Judgment [*Docket # 18* ]. Plaintiff brings three claims in this case: (1) violation of 47 U.S.C. § 605 (unauthorized use of radio/satellite communications); (2) violation of 47 U.S.C. § 553 (unauthorized use of cable communications); and (3) conversion. Plaintiff alleges that the Defendants illegally intercepted a satellite communication for a closed-circuit boxing match and showed the match to their patrons after collecting a cover charge. Plaintiff requests statutory damages, including enhanced damages for willful violations.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and the Order of Reference filed by the District Court, the Motion has been referred to this Court to issue proposed findings of fact and a recommendation for disposition of the Motion. Dock. # 24. The Court held an evidentiary hearing on the Motion on February 7, 2008. The Court recommends that, for the reasons stated herein, the Motion be **granted in part and denied in part.**

## I. Findings of Fact

Plaintiff Kingvision Pay–Per–View, Ltd. is a closed-circuit distributor of sports and entertainment programming and retains the commercial exhibition licensing rights to the Felix "Tito" Trinidad v. Ronald "Winky" Wright Fight Program ("Program") on May 14, 2005, including all under-card bouts and fight commentary. Complaint at ¶ 13. Upon retaining the rights to the Program, Plaintiff marketed the sub-licensing (commercial exhibition) rights in the Program to Plaintiff's commercial customers.

Plaintiff alleges that Defendants Elvira Gutierrez and Francisca Diaz are the owners of Angel's Taqueria, a partnership which holds the liquor license for the restaurant. Dock. # 21, Affidavit of John Bailey at 1. The phone number for the liquor license is the same phone number painted on the window of the restaurant. Plaintiff also states that 3 Hermanos Restaurant is not a registered business with the State of Colorado. Plaintiff alleges that Defendants illegally intercepted the Program and broadcast the Program without paying the sub-licensing fee. Specifically, investigator John Bailey states that he entered the Angel's Taqueria, d/b/a 3 Hermanos Restaurant, located at 1550 S. Federal Blvd., Unit N–O, on May 14, 2005 at 7:35 p.m. This establishment is in the same strip center as El Cuscatero, which was on the list of sub-licensees for the Program. *Id.* Mr. Bailey observed three televisions in the Restaurant: the first television was a large projection screen on the wall; the second, with an approximately 35″ screen, in the northwest corner; and the third, with an approximately 27″ screen, in the northeast corner. All three televisions were broadcasting the Pro-

gram. Mr. Bailey states that he watched the 7th and 8th rounds of Bugos v. Grigsby fight, an under-card to the Trinidad v. Wright fight.

During this time, Mr. Bailey also watched Trinidad's entrance to the MGM Grand and recognized the voice of Jim Lampley announcing the fight, though Mr. Bailey acknowledges that it was hard to hear the announcer over the loud music playing on the juke box. Mr. Bailey believed the capacity of the restaurant to be approximately 80 people. On three occasions during the 10 minutes he was there, Mr. Bailey counted the number of people in attendance, amounting to 17, 21 and 24 people, respectively. *Id.* Mr. Bailey did not pay a cover charge to enter the restaurant; he observed no advertisements for the Program; and he has no knowledge as to whether the restaurant was charging an enhanced fee for food and drinks.

In his affidavit, Plaintiff's president, Don King, states that Plaintiff has experienced a serious erosion in its sales of commercial programming, and that it retains investigators throughout the country to determine the cause of this loss of sales. Dock. # 22, Affidavit of Don King at ¶¶ 4–6. Mr. King further states Plaintiff has lost millions of dollars in revenue to due to signal piracy, which further inflates the price for those who legally purchase the Program from Plaintiff. *Id.* at ¶¶ 10–11.

During the evidentiary hearing, Tom Riley, Plaintiff's representative, testified that the Defendants did not have sub-licensing rights to broadcast the Program on May 14, 2005. Mr. Riley claimed that Plaintiff has lost "millions" of dollars in licensing fees due to the pirating of its proprietary programming and has expended a good deal of time and money in policing its signals to protect its interests. Mr. Riley

testified that piracy also causes Plaintiff to lose scores of paying customers. Specifically, Mr. Riley stated that a large establishment in Salt Lake City, Utah paid $8,000.00 for a license for a different fight, only to have several establishments steal the signal. Because only the paying establishment had a cover charge, the paying establishment did not recoup the cost of license and planned to never purchase a sporting event from Plaintiff again. As Mr. Riley explained, many establishments view the minimal chance of being caught pirating the signal as a small price to pay compared to never paying the licensing fee for Plaintiff's programs. Plaintiff further claims that its programming "cannot be mistakenly, innocently or accidentally intercepted." Doc. # 21.[1] At the same time, Mr. Riley testified that he knows of no other instances in which Defendants intercepted Plaintiff's signal.

With respect to Defendant Rosales' individual liability, Mr. Riley testified that Mr. Rosales is the owner and operator of Defendant Los Alanzanes Restaurant and Lounge, and that someone at the establishment had to intentionally intercept the satellite signal. As such, Mr. Riley contends that Defendant Rosales is responsible and liable for the violations of Section 605. Despite the Court's request for supplemental briefing and documentation supporting its position on individual liability, Plaintiff provided no response. *See* Doc. # 15.

## II. Recommended Conclusions of Law

Defendants were personally served with the Complaint in this case on May 18, 2007. Dock. ## 6, 7. After Defendants failed to file an answer, Plaintiff moved for Entry of Default by the Clerk of the Court, which was entered on August 21,

---

**1.** Plaintiff lists a number of methods by which a signal pirate may intercept and broadcast

proprietary programming. Dock. # 21, Affidavit of Don King at ¶ 8.

2007. Dock. # 16. By failing to answer the Complaint, Defendants have relieved the Plaintiff of the burden of proving its factual allegations. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Consideration of default judgment on Plaintiff's claims is now appropriate.

## A. Plaintiff's Claims

■ Count One of Plaintiff's Complaint alleges a violation of the Federal Communications Act ("FCA"), 47 U.S.C. § 605 (governing radio and satellite communications), which provides, in relevant part:

[N]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Plaintiff has alleged, through well-pleaded facts, that Defendants were not authorized to broadcast the Program in their restaurant. Defendants are general partners who own the establishment, which illegally broadcast the Program on May 14, 2005. Dock. # 28. This could only be accomplished through one of several illegal means. Dock. # 21, Affidavit of Don King at ¶ 8. Accordingly, Plaintiff has met the statutory requirements for liability under section 605.

■ Count Two of Plaintiff's Complaint alleges a violation of the FCA 47 U.S.C. § 553 (governing cable communications), which provides:

No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). The factual allegations set forth above also establish a violation of section 553, in that Mr. Riley testified at the evidentiary hearing that services intercepted or received by Defendants were also distributed via cable. Because these facts are deemed admitted, Plaintiffs have satisfied the statutory elements for liability under section 553.

■ Count Three is a claim for conversion pursuant to Colo.Rev.Stat. § 18–4–405. Dock. # 23, Supplemental Brief at 3. For this stolen property statute to apply, "the owner of the property must prove that the taker ... committed acts constituting at least one of the statutory crimes" listed within the statute. *Itin v. Ungar,* 17 P.3d 129, 134 (Colo.2000). Thus, courts require a plaintiff to meet the statutory definition of criminal theft to recover for civil theft. *Internet Archive v. Shell,* 505 F.Supp.2d 755, 764 (D.Colo.2007). To do so, Plaintiff must establish "(1) that the defendant knowingly obtained control over the owner's property without authorization and (2) that he or she did so with the specific intent to permanently deprive the owner of the benefit of property." *Itin,* 17 P.3d at 134 (citing § 18–4–401(1)). Thus, the crucial determination is whether Defendants knowingly took Plaintiff's broadcast rights and did so with the specific intent to deprive Plaintiff permanently of its rightful ownership to the broadcast rights.

■ In this case, the Court has already determined that the Defendants intentionally intercepted the satellite signal to broadcast the Program without authorization. In addition, Plaintiff alleges that Defendants' acts of conversion "were will-

ful, malicious, and intentionally designed to harm Plaintiff KingVision Pay–Per–View, Ltd., and to subject said Plaintiff to economic distress." Complaint at ¶ 28. These allegations are deemed admitted by default. This Court, therefore, recommends that the District Court find Plaintiff has met the elements necessary to prove a violation of Colo.Rev.Stat. § 18–4–405 in this case.

### B. Damages

While Plaintiff has set forth the elements of liability for both statutes, recovery under *both* section 553 and section 605 is improper. *See Garden City Boxing Club, Inc. v. Puebla's Grocery*, 2007 WL 4243219, *3 (E.D.N.Y. Nov. 29, 2007) (citing *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir.1998) ("seeking damages under both § 553 and § 605 violates the general principle that precludes double recovery")). Plaintiff has elected to pursue damages under section 605, Dock. # 23, Supplemental Brief at 2. This election is proper because section 605 provides for more severe sanctions. *International Cablevision v. Sykes*, 75 F.3d 123, 127 (2d Cir.1996).

Plaintiff is seeking statutory damages, as set forth in 47 U.S.C. § 605(e)(3)(C)(i)(II):

> (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

■ The Court views the interception of the Program in this case as one violation, because "most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation." *Garden City Boxing Club v. Perez*, No. 05–3713, 2006 WL 2265039, *5 (E.D.N.Y. Aug. 8, 2006) (citing *Time Warner Cable v. Taco Rapido Rest.*, 988 F.Supp. 107, 111 (E.D.N.Y.1997)).

In similar cases, courts have calculated damages based on either the number of patrons in the establishment, *e.g.*, *Taco Rapido Rest.*, 988 F.Supp. at 111 ($50 per patron); *Entertainment by J&J, Inc. v. Mama Zee Rest.*, 2002 WL 2022522, at *4 (E.D.N.Y. May 21, 2002) ($50 per patron); *New Contenders, Inc. v. Diaz Seafood Corp.*, 1997 WL 538827, at *2 (S.D.N.Y. Sept. 2, 1997) ($300 per patron), or a flat sum for each violation, *e.g.*, *Entertainment by J & J, Inc. v. Suriel*, 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000 for basic and enhanced statutory damages); *Kingvision Pay–Per–View, Ltd. v. Jasper Grocery*, 152 F.Supp.2d 438, 442–43 (S.D.N.Y.2001) (awarding $15,000 ($5,000 for basic statutory damages and $10,000 for enhanced statutory damages)).

■ This Court finds that the second method for calculating statutory damages is appropriate in this case. Mr. Riley observed 24 people in the restaurant that night, and a damage award based on this limited number may do little to prevent such unlawful conduct in the future. Moreover, it does not fully represent the harm to Plaintiff, because Plaintiff's sub-licensing fee is based on the capacity of the establishment, not the number of patrons on a given night. Based on the reasoning set forth in *Jasper Grocery*, the Court finds that an award of damages in the amount of $5,000.00 is appropriate here. 152 F.Supp.2d at 442.

■ Plaintiff further seeks enhanced damages based on Defendants' willful violation of section 605, as follows:

> (ii) In any case in which the court finds that the violation was committed willful-

ly and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(i)(II). To receive enhanced damages, Plaintiff must prove that Defendants' broadcast of the Program was willful and for "purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The evidence established that for Defendants in this case to access the Program, it would have been necessary to use an unauthorized decoder, divert the satellite signal, or misrepresent the establishment as a residence. The illegality of any of these actions would have been apparent to the Defendants. Further, the Court finds that Defendants engaged in this deliberate conduct for the purposes of direct or indirect commercial advantage or private financial gain. The undisputed evidence supports a finding that Defendants illegally intercepted and broadcast the Program to attract patrons to their establishment and to encourage those patrons to prolong their stay and consume food and beverages. Therefore, the Court recommends that the District Court find the Defendants engaged in willful conduct under § 605(e)(3)(C)(ii) on May 14, 2005.

Courts typically consider the following factors in determining whether a defendant's willful conduct calls for enhanced damages: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." *Kingvision Pay–Per–View, Ltd. v. Recio*, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

Here, Plaintiff put forth strong evidence of the willfulness of as well as the harm caused by Defendants' actions, which the Court believes underscores not only the pervasiveness of such violations, but also the need for an award that will serve as a deterrent to future violations. Even so, the factors listed above do not support a substantial enhanced damages award. Plaintiff presents no evidence of prior violations; Plaintiff provides no evidence of significant earnings by Defendants that night; Plaintiff's loss of revenue for one establishment is not significant; there is no evidence of advertising to entice a larger crowd; the restaurant did not have a cover charge; and there is no evidence that the restaurant charged a premium for food and drinks that night. Nonetheless, Defendants' conduct is clearly willful, which cannot be lightly disregarded. While awarding the maximum amount of $100,000.00 in this case is improper, the Court believes, based on the record in this case, that an enhanced award in the amount of $15,000.00 is appropriate. Such an award, treble the principal damages, adequately addresses the willfulness of Defendants' illegal conduct; should serve as a deterrent for future violations; and recognizes that it is only fifteen percent of the statutory maximum since no "aggravating" factors exist.

██ Plaintiff further seeks treble damages for the conversion claim under Colorado law. The stolen property statute, under which Plaintiff brings its conversion claim, specifically provides a remedy of "two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater." Colo.Rev.Stat. § 18–4–405 (2007). Here, in support of its civil theft claim, Plaintiff seeks treble damages, but fails to articulate its actual damages, if any. In fact, Plaintiff provided no evidence of actual damages for the Court

to consider. Mr. Riley testified that he did not have the rate card for this fight and could not determine what Defendants should have paid for the Program. Accordingly, the Court finds that Plaintiff has failed to set forth sufficient evidence of actual damages, which would limit damages to two hundred dollars. In any case, the Court finds that any recovery awarded pursuant to Colo.Rev.Stat. § 18–4–405 would constitute an impermissible double recovery for the same injury. *See Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1459 (10th Cir.1997) ("Courts have held frequently that a plaintiff may not recover both punitive damages under a state tort law claim and treble damages under a federal statutory claim, where the state and federal claims arise from the same operative facts and merely represent alternative theories of recovery"); *see also Lexton–Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 823 (Colo.1992). The Court, therefore, recommends that Plaintiff's Motion be denied, as to damages on its conversion claim.

 As the prevailing party under 47 U.S.C. § 605, Plaintiff is entitled to its reasonable attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff's conversion claim also provides for, recovery of "the costs of the action and reasonable attorney fees." Colo.Rev.Stat. § 18–4–405. By affidavit, Plaintiff's counsel states that his attorney's fees total $850.00. Dock. # 29. Plaintiff also seeks costs of $446.00, for the filing of the Complaint and service of process. The Court finds these amounts reasonable and recommends an award of fees and costs in the amount of $1,296.00.

## III. Conclusion

Accordingly, and based on the foregoing, it is hereby RECOMMENDED that the Plaintiff's Motion for Default Judgment *[filed January 24, 2008; docket # 18 ]* be **granted in part and denied in part** as follows:

(1) that the District Court **grant** the Motion as to Plaintiff's claims pursuant to 47 U.S.C. § 553, 47 U.S.C. § 605, and Colo.Rev.Stat. § 18–4–405 against Defendants;

(2) that the District Court **award** statutory damages pursuant to 47 U.S.C. § 605 in the amount of $5,000.00; enhanced damages in the amount of $15,000.00; attorney's fees in the amount of $850.00; and costs in the amount of $446.00; and

(3) and that the District Court **deny** the Motion as to all other requests for damages, including damages pursuant to Colo.Rev.Stat. § 18–4–405, as impermissible double recovery.

Under Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[2]

---

**2.** The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations.

*United States v. Raddatz*, 447 U.S. 667, 676–83, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or

adopted by the District Court. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Moore v. United States,* 950 F.2d 656, 659 (10th Cir.1991); *Niehaus v. Kansas Bar Ass'n,* 793 F.2d 1159, 1164 (10th Cir.1986).